REVISED - September 18, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 00-10934

---

JEFFREY HENRY CALDWELL,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

---

Application for Certificate of Appealability and Stay of
Execution from the United States District Court
For the Northern District of Texas, Dallas Division

---

August 30, 2000

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Today we examine Texas's response to the decision of the Supreme Court[1] that the Constitution forbids the execution of an insane person. Securing this "right" turns the focus from validity of conviction and sentence with its search for historical fact to an inquiry into the present mental state of an accused, more precisely his present mental state, and at a point of time in the

---

[1] Ford v. Wainwright, 477 U.S. 399 (1986).

near future.  This elevation to constitutional status of common law and statutory rules and resulting shift in focus has prompted responses by the state and a procrustean enterprise of the judiciary to fit Ford issues within our procedural apparatus for post-trial review of conviction and sentence.[2]  That fit is the backdrop to today's decision.  We conclude that Texas has afforded the petitioner all process constitutionally due.  We refuse to issue a certificate of appealability or to stay the scheduled execution.

I

Jeffrey Henry Caldwell is scheduled to be executed on August 30, 2000, by the State of Texas for the crime of capital murder. The Texas Court of Criminal Appeals affirmed his conviction and sentence in 1991.  Caldwell v. State, 818 S.W.2d 790 (TEX. CRIM. APP. 1991), cert. denied, 112 S.Ct. 1684 (1992).  Caldwell first sought federal habeas relief, but his petition was dismissed without prejudice for failure to exhaust state remedies by the Northern District of Texas on September 9, 1993.  Caldwell then filed a post-conviction application in the state trial court in November of 1993.  That application was denied in 1994 by Judge Gerry Meier of the 291st District Court in Dallas County, Texas.  A second post-conviction application was filed with Judge Meier on March 22, 1995.  She denied relief on March 30, 1995.  The Texas Court of

---

[2]See e.g., Stewart v . Martinez-Villareal, 118 S. Ct. 1618 (1998), and Art. 46.04, TEX. CODE OF CRIM. PROC.

2

Criminal Appeals affirmed that denial of relief on March 31, 1995.

## II

On May 30, 1995, Caldwell filed a petition for writ of habeas corpus in the Northern District of Texas, asserting numerous claims. The district court denied all relief in January of 1999, declining Caldwell's motion for leave to amend the petition to include a claim under Ford v. Wainwright. On February 18, 1999, we granted a certificate of probable cause to appeal but affirmed the denial of relief on all claims and also affirmed the refusal of leave to amend. We concluded that Caldwell's Ford claim was premature, pointing out that the Texas legislature had recently provided a procedure for testing the competency of a person to be executed under Article 46.04 of the Texas Code of Criminal Procedure, effective September 1, 1999. On April 11, 1999, the trial court scheduled Caldwell's execution for August 30, 2000. The Supreme Court denied certiorari and a stay of execution on August 23, 2000.[3]

## III

On June 28, 2000, the State of Texas filed with Judge Meier a "Request for Psychiatric Examinations and Determination of Competency," pursuant to the Texas Code of Criminal Procedure, Article 46.04.

The State's motion cited occasions in which Caldwell's

---

[3]Justice Stevens and Justice Ginsburg would have granted the stay for execution.

3

competency had surfaced over the course of this prosecution. It observed that, while Caldwell did not offer a defense during the punishment phase, the State had called a psychiatrist who, responding to a hypothetical question, expressed the opinion that Caldwell was a sociopath. The witness explained that Caldwell knew right from wrong but chose to do wrong.

The State also pointed to the affidavit of Dr. Phillip J. Murphy, obtained in connection with the first application for writ of habeas corpus filed in the state trial court in 1993. In the affidavit Dr. Murphy swore that his preliminary examination demonstrated serious mental illness that could only be conclusively determined through further examination and testing; that he was unable to do so without funding.

Dr. Murphy expressed the view that "the defendant's reality level was best described as psychotic"; that his Bender-Gestalt test indicated brain damage; that while he needed additional tests, execution may not be appropriate for a person with these disorders.

The State pointed out that Caldwell in his first State petition had claimed that his counsel was ineffective for not investigating and offering evidence of his mental problems; that the trial court should have instructed the jury regarding a severe mental disorder. The State observed that the defendant raised the same issues in his second federal writ and that the district court, affirmed by this court, had rejected the claims of ineffective assistance of counsel.

4

In its motion of June 28 the State took the position that the prosecution did "not believe that the defendant is suffering from any mental disorders rendering him incompetent to be executed," but that "as a precautionary measure," the district court ought to appoint two qualified mental health professionals to evaluate his mental competence. Without opposition from Caldwell, the district court granted the motion on August 9, 2000. It appointed two psychiatrists to examine Caldwell. Both reported back to the district court that Caldwell did not cooperate and refused to confer with them.[4]

IV

Caldwell filed an application for state writ of habeas corpus on August 16, claiming he is not competent and requesting funding to obtain mental health experts of his own choosing. As summarized in the State's response:

> In raising his claim of incompetency to be executed in the state courts, Caldwell relied upon a 1992 psychological evaluation performed by Philip Murphy and a 1998 affidavit of one of his attorneys, Peter MacMillan. Without addressing the issue of competency to be executed (or to stand trial), Dr. Murphy was of the opinion that Caldwell possessed a low I.Q., suffers from organic brain damage, and presents a "serious thought

---

[4]Judge Meier appointed Dr. James Grigson and Dr. Michael Pitman to evaluate Caldwell's competency to be executed. Caldwell asserts that he objected to the failure to appoint an "independent" professional and Dr. Grigson as being well known for his bias. We accept counsel's unchallenged assertion that an objection was made, although we have been pointed to nothing in the record supporting it.

disorder of either a paranoid or schizophrenic nature." MacMillan averred that correspondence he had received from Caldwell indicated to him that Caldwell failed to appreciate the factual basis that led to his conviction and the severity of the punishment for his crime.

On August 18, Judge Meier filed a "notation of subsequent writ application," concluding that:

> This Court further finds that to the extent applicant's current subsequent writ application could be construed as a motion pursuant to Article 46.06 of the Texas Code of Criminal Procedure, the pleadings fail to make a substantial showing of Caldwell's incompetency to be executed as required by Article 46.04(f).

She then directed that the Clerk of the Court forward the relevant papers to the Texas Court of Criminal Appeals.

V

Caldwell's counsel then filed with the Texas Court of Criminal Appeals his "subsequent application for writ of habeas corpus, motion for appointment and compensation of counsel, and motion for funding for mental health experts." On August 28, a divided Texas Court of Criminal Appeals dismissed by written opinion Caldwell's application.

The court treated Caldwell's motion as an effort to invoke the procedures of Article 46.04. It first noted that Article 46.04 made no provision for the appointment of counsel, holding that while the "trial court could appoint counsel in any given case," it did not abuse its discretion here. The court explained it had neither the authority to remand for a hearing nor authority to grant funds to hire mental health experts to assist in the hearing.

6

By the Texas Court of Criminal Appeal's reading, it had authority under Art. 46.04 only to review a finding by the trial court that a defendant is incompetent; it had no jurisdiction to review a "finding of a substantial showing of incompetence or, after a hearing takes place, the finding that the defendant is competent to be executed."

Caldwell then filed a petition for writ of habeas corpus and stay of execution on August 29, 2000, with the United States District Court, Northern District of Texas. The return to federal court relies upon the Supreme Court's decision in Stewart v. Martinez-Villareal, 118 S.Ct. 1618 (1998) that "respondent's Ford claims here – previously dismissed as premature – should be treated in the same manner as the claim of a petitioner who returns to a federal habeas court after exhausting state remedies," 118 S.Ct. at 1622 - specifically that his Ford claim is not a successive petition. Texas concedes that the present petition is not successive.[5]

VI

Caldwell's federal petition combines several contentions in a single narrative. As best we can discern, read most favorably to Caldwell, he attacks Article 46.04 on six grounds. He contends that, as construed by the Texas Court of Criminal Appeals, there is

_____

[5]Given the late hour and our disposition of this case, we do not here question this concession and will assume that the petition is not successive.

7

no right of appeal from a decision by a state trial court finding a petitioner to be competent for execution.  Second, that the statute both facially and as applied denies Caldwell his right "to be evaluated by mental health professionals of his own choosing." Third and relatedly, he contends that since Caldwell is indigent, he would be unable to hire such assistance and hence he is entitled to state funding for that purpose.  Fourth, that Texas denied him the assistance of medical experts in preparing for his competency hearing and offering both expert advice and testing.  Fifth, he broadly contends that since his <u>Ford</u> claim has never been determined on the merits by any court, he is entitled to a hearing in federal court.  Finally, Caldwell appears to question the state trial court's holding that he did not make a substantial showing of competency.

VII

The United States District Court for the Northern District of Texas denied a stay of execution and application for certificate of appealability on August 30, 2000.  Judge Sanders concluded that petitioner had been dilatory in pursuing his <u>Ford</u> claims.  He also concluded that the merits of the petition did not support a stay, specifically that the federal court was required to defer to the factual finding of the state trial court.  Finally, the district court did not reach the constitutional claims but questioned "the lack of meaningful judicial review in § 46.04(k).

VIII

8

A state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2000). Section 2254(d)(1) provides the standard of review for questions of law and mixed questions of law and fact. Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000).

Under the "unreasonable application" clause, the court may grant the writ if the state court identifies the correct governing legal principle but applies it incorrectly, or expands a legal principle to an area outside the scope intended by the Supreme Court. See id. at 1521, 1523. The state court's application of the law must be "unreasonable" in addition to being merely "incorrect." See id. at 1522. "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." See id. at 1521.

Under the "contrary to" clause of § 2254(d)(1), a federal court may grant the writ if the state court has arrived at a conclusion opposite to that reached by the Supreme Court on a

question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. See id. at 1523.

On review of a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(b)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000).

2

Caldwell points us to no authority in support of his contention that he is entitled to appellate review in the state court of the trial court decision that he is competent. We know of no such authority. The constitutional footing for rights of appeal from criminal conviction has enjoyed an uneven history, initially resting on principles of equal protection. Of course, since the

10

absence of appellate review is across the board, no petitioner can appeal; there is no footing for an equal-protection-based right of access for indigents. To the extent a right of appeal is footed directly upon the assurance of a fair process in determining guilt and sentence, we see no principled basis for its extension to a determination by the state judiciary of the issue of competence for execution. Regardless, we lack the authority to do so in a habeas case.

Caldwell points to Ake v. Oklahoma, 470 U.S. 68 (1985), in support of his contention that he is entitled to medical assistance of his own choosing. The extension of Ake principles to a Ford hearing on competency to be executed aside, Ake itself disavowed any such right. Id. at 83.

His assertion that he is entitled here to Ake's assured access to medical assistance in evaluating and preparing a defense has more purchase, but ultimately is equally without merit. Ake v. Oklahoma held that an indigent criminal defendant who demonstrates "that his sanity at the time of the offense is to be a significant factor at trial" has a due process right to "a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. This right extends to the sentencing phase of trial. It did not by its terms or reasoning extend to a Ford type hearing. Safeguards rooted in the Constitution's protection of a fair and accurate trial are not necessarily implicated by Eighth Amendment

11

prohibitions of cruel and unusual punishment. In <u>Ford v. Wainwright</u>, Justice Powell emphasized this distinction: "[T]he only question raised is not *whether*, but *when*, his execution may take place. This question is important, but it is not comparable to the antecedent question whether petitioner should be executed at all. It follows that this Court's decisions imposing heightened procedural requirements on capital trials and sentencing proceedings do not apply in this context." 477 U.S. at 425 (citations and footnote omitted).

Under 46.04 Judge Meier was not required to appoint medical experts absent a substantial showing by Caldwell, a showing Caldwell conceded he could not make assertedly for want of funds to engage medical assistance. Judge Meier, however, proceeded to appoint two experts. Caldwell did not object to the appointment of experts. Rather, he objected to the fact that Dr. Grigson was one of the two experts chosen. Then Caldwell refused to allow either of the two to examine him.

3

All else aside, there are overarching flaws in Caldwell's request for stay of execution. Caldwell is in no position to claim that Texas has prejudiced his ability to trigger the appointment under Art. 46.04 of two medical experts to examine his competency.[6]

_____

[6]To the extent Caldwell challenges the state trial judge's holding that he had not made a substantial showing of incompetence, the challenge is without merit – even if we were not to accord that finding the deference it is due.

That was done.  Nor does he point to any impediment imposed by the state to an adversarial test of the experts' reports.  Ultimately, Caldwell's claim shrinks to claims that he was entitled to an expert of his choice or an expert to assist in any challenge of the opinion of the experts.  This is no more and no less than a request that Ake be extended to Ford proceedings.  In any event, such a new rule is not available in his federal habeas challenge to a state decision.  Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989); 28 U.S.C. § 2254(d)(1).

We are persuaded that Art. 46.04 is valid, both facially and as applied.  We reject a certificate of appealability and refuse to stay execution.