# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

No. 00-20942

_____

CRAIG NEIL OGAN,

Petitioner-
Appellant,

versus

JANIE COCKRELL, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL
DIVISION,                                                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

June 28, 2002

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Petitioner-Appellant, Craig Neil Ogan ("Ogan"), appeals the district court's denial of his

Petition for Writ of Habeas Corpus regarding his claims of ineffective assistance of counsel. For the

reasons assigned herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

I.      Facts of the Crime

In late 1989, Ogan moved from St. Louis, Missouri to Houston, Texas. Ogan had acted as

a confidential informant for the Drug Enforcement Agency ("DEA") in St. Louis. However, upon

his request, the DEA relocated him to Houston after state court prosecutions for narcotics trafficking revealed his identity.

In Houston, DEA Agent Norman Houle ("Agent Houle") supervised Ogan. Agent Houle warned Ogan that the DEA did not permit informants to carry weapons. However, while in Houston, Ogan carried a firearm despite the DEA policy. Agent Houle also instructed Ogan not to get involved in any drug deals and to "just let his face be known" around Houston. Nevertheless, Ogan sought involvement in drug transactions.

On December 8, 1989, Ogan called Agent Houle from Taco Rico, a Houston restaurant, and told him that he had encountered someone with whom he had previously attempted to set up a drug deal. The drug deal had not realized, but resulted in an armed confrontation. Ogan told Agent Houle that at the restaurant the man had put a gun to Ogan's head, and that he had put a gun to the man's head. The man was still outside the restaurant when Ogan called Agent Houle. Ogan told Agent Houle that he was afraid and asked him to come to the restaurant and escort him safely out.

Agent Houle arranged for Houston police officers to accompany Ogan off the premises. Houston Police Officer Darryl O'Leary ("Officer O'Leary") arrived to assist Ogan at around 8:00 p.m. According to Officer O'Leary, Ogan was extremely excited. Ogan requested that the officer take him to his apartment so that he could remove some papers and tapes related to a DEA investigation. However, Officer O'Leary told him that he could not take him there until after backup arrived. Ogan then became impatient, hostile, and loud. Houston Police Officer Steven Hanner ("Officer Hanner") arrived to provide backup for Officer O'Leary. The officers took Ogan to his apartment. Ogan retrieved some items from his apartment, including a .38 caliber pistol, a "sawed-off" shotgun, and at least two hunting knives. The officers followed Ogan to a Best Western Motel,

2

now a Motel 6, and left him there at around 9:00 p.m.

Ogan made two or three long-distance telephone calls after he checked in to his motel room. Shortly thereafter, a motel employee disconnected his long-distance service because he had failed to leave a deposit for such service. Ogan phoned the motel office and requested that the service be reconnected. He then went to the office to pay for his calls and to leave a deposit. While there, he complained that the heater in his room was not functioning properly. He was loud and upset as he complained. He eventually left the office but returned shortly thereafter, at around 12:30 a.m., to complain again. He requested his money back for the long-distance calls. Because Ogan grew angrier as he confronted the motel attendant, the attendant threatened to call security. Ogan began kicking the office door, and the attendant dialed 911. Ogan then left the motel and began walking toward a Stop-n-Go store. As he was leaving, he saw a police officer across the street from the motel. He walked over to the patrol unit and looked in the passenger side window. Houston Police Officers Morgan Gainer ("Officer Gainer") and James Boswell ("Officer Boswell") were sitting in the patrol unit. They had driven into a parking lot to make a traffic stop.

Ogan knocked on the window of the patrol unit. Officer Boswell let his window down and asked Ogan what he wanted. Ogan responded that the DEA had left him at the motel and that he was cold. Officer Boswell told Ogan to back away from the car until the officers finished the traffic stop and then let his window back up. However, Ogan knocked on the window again. Officer Boswell opened the door and again asked Ogan to step away from the car. Ogan stated that he was a DEA informant and that he was cold. Officer Boswell again told Ogan to wait. Ogan repeated his previous statements, and Officer Boswell told him that he would have to wait, leave, or go to jail. Officer Boswell then got out of the patrol unit. Ogan demanded immediate assistance. Officer

3

Boswell unholstered his weapon, and holding the gun behind his right leg, reached into the patrol unit to unlock the back door. At this point, Ogan pulled out a gun and shot Officer Boswell in the head and then stated "Well, fuck you then." Ogan then ran. Officer Gainer, who had seen Officer Boswell fall against the back door of the patrol unit, chased Ogan. The officer caught Ogan, wounding him in the process.

II.     Ogan's Trial: Guilt-Innocence Phase and Penalty Phase

On February 2, 1990, the State of Texas indicted Ogan for the capital murder of a police officer. At trial, Ogan testified that Officer Boswell had threatened to tell people that he was a "DEA snitch." He also testified that Officer Boswell was "lunging" toward him and frantically attempting to remove his gun from the holster. Ogan claimed to have killed Officer Boswell in a reflexive action, without thinking and fearing that Officer Boswell was going to shoot him. Sally Webster ("Webster"), a forensic psychologist, testified on Ogan's behalf during the guilt/innocence phase of the trial. She testified that Ogan was anxious, agitated, and fearful for his life after moving to Houston. She also stated that he suffered from functional paranoia, which, according to Webster, is not a form of insanity. She testified that Ogan was intelligent but used his intelligence inefficiently. She also determined that Ogan had a passive aggressive personality disorder. The jury found Ogan guilty.

During the penalty phase of the trial, the State presented testimony from several witnesses regarding Ogan's history of aggressive behavior. Ogan countered this evidence with testimony from several friends and relatives. The jury answered affirmatively the three special issues given after the sentencing hearing[1], and the trial court sentenced Ogan to death.

---

[1]Special Issue No. 1 asked: "Was the conduct of the defendant, Craig Neil Ogan, that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?"

4

III.    Direct Appeal to the Texas Court of Criminal Appeals

Ogan filed a direct appeal to the Texas Court of Criminal Appeals, raising three points of error. He challenged (1) the sufficiency of the evidence demonstrating his deliberate conduct in causing Officer Boswell's death; (2) the sufficiency of the evidence establishing his future dangerousness; and (3) the effectiveness of his trial counsel at the penalty stage regarding counsel's requested jury instruction on mitigation. The Court of Criminal Appeals affirmed Ogan's conviction and sentence. On December 21, 1993, the United States Supreme Court denied Ogan's writ of certiorari petition.

IV.    State Habeas Proceedings and Appeal

On February 4, 1999, the 230th District Court of Harris County, Texas, Judge Belinda Hill, adopted the State's proposed findings of fact, conclusions of law, and order and recommended that the Texas Court of Criminal Appeals deny Ogan's application for habeas relief. The state district court concluded that Ogan had failed to demonstrate ineffective assistance of his trial counsel with regard to counsel's failure to employ a mitigation specialist and with regard to counsel's alleged failure to investigate Ogan's history in an effort to discover mitigating evidence. The court also found that Ogan had failed to demonstrate that his conviction was unlawfully obtained.

On April 28, 1999, the Texas Court of Criminal Appeals denied Ogan's petition for habeas relief. In a brief order, the court stated:

> In the instant cause, applicant presents a single allegation challenging the validity of his conviction and resulting sentence. The trial court has entered findings of fact and conclusions of law recommending the relief sought be denied. This court has

_____

Special Issue No. 2 asked: "Is there a probability that the defendant, Craig Neil Ogan, would commit criminal acts of violence that would constitute a continuing threat to society?"

Special Issue No. 3 asked: "Was the conduct of the defendant, Craig Neil Ogan, in killing the deceased unreasonable in response to the provocation, if any, by the deceased?"

reviewed the record. The findings and conclusions entered by the trial court are supported by the record and upon such basis the relief sought by the applicant is denied.

Ex Parte Ogan, No. 41,220-01 (Tex. Crim. App. April 28, 1999) (per curiam) (unpublished).

V.      Federal Habeas Proceedings

On August 3, 1999, Ogan filed a preliminary petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 30, 1999, Ogan filed a supplemental petition for a writ of habeas corpus. The petition requested relief on the following bases: (1) insufficient evidence to sustain the jury's affirmative answer to the statutory punishment issue on deliberate conduct; (2) insufficient evidence to sustain the jury's affirmative answer to the statutory punishment issue on future dangerousness; (3) ineffective assistance of counsel based on trial counsel's limitation of the jury instruction on mitigation; (4) ineffective assistance of counsel based on trial counsel's failure adequately to develop and present mitigation evidence; and (5) Ogan's purported incompetency to stand trial. The State moved for summary judgment on all of Ogan's claims, and the district court granted that motion.

The district court rejected Ogan's two insufficiency-of-the-evidence claims regarding the special issues on the merits.[2] Additionally, the court rejected Ogan's claim of ineffective assistance of counsel regarding the jury instructions on mitigating evidence. The district court found that Ogan had failed to present his claim of lack of competency to stand trial on direct review, or during the state habeas proceedings and that he had failed to demonstrate cause and prejudice for this failure. Nevertheless, the court considered the claim on the merits and rejected it. The district court also applied the procedural bar to Ogan's claim that his trial counsel was ineffective for failing to

_____

[2]Ogan does not seek a Certificate of Appealability ("COA") on these issues in his petition to this court.

6

recognize the extent of his mental health problems. The district court rejected Ogan's remaining "miscellaneous" ineffective assistance claims regarding state trial and habeas counsel and the Texas state courts' obligations to provide him with effective counsel. The court based its rejection of these claims on either a procedural bar, the merits, or both. The district court also denied Ogan's request for an evidentiary hearing. Additionally, the court found that Ogan had failed to make a substantial showing of the denial of a constitutional right, and refused to grant a COA even though Ogan had not yet requested one. Ogan now appeals the district court's rulings.

## DISCUSSION

### I.      Standard of Review

Ogan filed his preliminary habeas petition pursuant to 28 U.S.C. § 2254 in the district court on August 3, 1999, and his supplemental petition on December 30, 1999, both after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Thus, AEDPA applies to his § 2254 application. See Lindh v. Murphy, 521 U.S. 320, 335-36 (1997); Nobles v. Johnson, 127 F.3d 409, 412-13 (5th Cir. 1997). Under AEDPA, a petitioner seeking habeas relief must obtain a certificate of appealabilty ("COA"). See 28 U.S.C. § 2253(c)(2). A COA may be issued only if the prisoner makes a substantial showing of the denial of a constitutional right. See id. A petitioner makes this showing if he demonstrates that his petition involves issues which are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues are adequate enough to deserve encouragement to proceed further. Miller-El v. Johnson, 261 F.3d 445, 449 (5th Cir. 2001); see also Lamb v. Johnson, 179 F.3d 352, 356 (5th Cir. 1999).

Although the nature of the death penalty is a proper consideration for determining whether the court should issue a COA, its severity alone is not sufficient to warrant the issuance of the certificate. See Lamb, 179 F.3d at 356. Nevertheless, doubts regarding the propriety of issuing the

7

certificate should be resolved in favor of the petitioner. Id. Section 2254(d), as amended by AEDPA, provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Section 2254(d)(1) provides the standard of review for questions of law and mixed questions of law and fact." Caldwell v. Johnson, 226 F.3d 367, 372 (5th Cir. 2000). The court may grant habeas relief under the "unreasonable application" clause "if the state court identifies the correct governing legal principle but applies it incorrectly, or expands a legal principle to an area outside the scope intended by the Supreme Court." Id. Furthermore, the state court's application "must be 'unreasonable' in addition to being merely 'incorrect.' " Id. In other words, the appropriate inquiry is " 'whether the state court's application of clearly established federal law was objectively unreasonable.' " Id. (quoting Williams v. Taylor, 529 U.S. 362, 409 (2000)). With respect to the "contrary to" clause of § 2254(d)(1), "a federal court may grant the writ if the state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides the case differently than the Supreme Court on a set of materially indistinguishable facts." Id.

This Court reviews a district court's grant of summary judgment in a habeas proceeding *de*

*novo*. See Soffar v. Johnson, 237 F.3d 411, 449 (5th Cir. 2000). "When reviewing summary judgment on a petition for habeas corpus, consistent with the provisions of 28 U.S.C. § 2254(d), we 'presume all state court findings of fact to be correct in the absence of clear and convincing evidence.' " Id.; see Caldwell, 226 F.3d at 372.

II.     Procedurally Defaulted Claims

In considering Ogan's writ of habeas corpus petition, the district determined that the following claims were procedurally defaulted: (1) Ogan's claim that the state failed to provide competent habeas counsel; (2) his assertion that he was incompetent to stand trial; and (3) Ogan's contention that his trial counsel was ineffective because counsel failed to realize the extent of his mental health problems. The law requires that "a state prisoner seeking to raise claims in a federal petition for habeas corpus ordinarily must first present those claims to the state court and must exhaust state remedies." Martinez v. Johnson, 255 F.3d 229, 238 (5th Cir. 2001) (citing 28 U.S.C. § 2254(b)). Generally, if the petitioner fails to follow these procedures, his claims will be considered procedurally defaulted and will not be regarded as a bases for granting federal habeas relief. Id. at 239 (citing Keeney v. Tamayo-Reyes, 504 U.S. 1, 9 (1992)). However, a petitioner can overcome this procedural default, and thus procure federal habeas corpus review of his barred claims, if he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. Id. (citing Jones v. Johnson, 171 F.3d 270, 277 (5th Cir. 1999)).

A.     Failure to Provide Competent Habeas Counsel

Ogan argued for the first time in his federal habeas petition that the state courts violated his rights to meaningful access to the courts, equal protection, and due process by refusing to remedy

its earlier error of appointing him ineffective counsel.[3]  The district court determined that the claims were procedurally defaulted and could not constitute cause for any other procedurally barred claims. The district court further noted that there is no underlying right to counsel in state post-conviction review and that there is no cognizable constitutional claim based on the ineffectiveness of state habeas counsel.  The district court concluded that to recognize a constitutional claim for ineffective assistance of state habeas counsel would require the retroactive application of a new constitutional principle on collateral review in violation of the Supreme Court's decision in Teague v. Lane, 489 U.S. 288 (1989).[4]

Ogan challenges the district court's determination that he could not assert a constitutional claim on the basis of ineffective assistance of state habeas counsel.  He asserts that the Texas courts' appointment of incompetent counsel was a violation of his statutory right to competent counsel, as well as a violation of his due process rights under the Fourteenth Amendment.  Ogan avers that because Texas has opted to provide post-conviction review of death sentences under article 11.071 of the Texas Code of Criminal Procedure, and has guaranteed the appointment counsel under that statute, it must follow the statutory requirements in accordance with due process.  He concedes that

---

[3]The trial court appointed habeas counsel, Stephen Taylor ("Taylor"), to represent Ogan. After the trial court recommended to the Texas Court of Criminal Appeals that Ogan's habeas application be denied, and while the habeas application before the Texas Court of Criminal Appeals was pending, Ogan sent  a letter to the Court of Criminal Appeals. In the letter, dated April 7, 1999, Ogan requested that the court dismiss Taylor and appoint another attorney to represent him.  Ogan also included a *pro se* motion requesting the removal of Taylor from his case and providing examples of Taylor's alleged incompetence.  The Court of Criminal Appeals did not act on Ogan's request.

[4]In Teague, the Supreme Court declared that new constitutional rules of criminal procedure may not be announced on collateral review.  489 U.S. 288, 310 (1989).  The Court clarified that "in general,. . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government."  Id. at 301.

10

the Sixth Amendment does not guarantee effective assistance of counsel in state post-conviction proceedings. However, he argues that there are other constitutional bases to support his claim that he was entitled to effective assistance of state habeas counsel, namely the First Amendment right to meaningful access to courts and the Fourteenth Amendment due process requirement that state forums and procedures be administered in a reasonably fair and consistent manner.

Ogan's claim that the Texas courts violated his constitutional rights by providing him ineffective habeas counsel is meritless. This Court has repeatedly held, usually in the context of rejecting petitioners' arguments that ineffective habeas counsel is sufficient cause to overcome a procedural bar, that there is no constitutional right to competent habeas counsel. See Jones v. Johnson, 171 F.3d 270, 277 (5th Cir. 1999) ("The law is well-established . . . that such error committed in a post-conviction application, where there is no constitutional right to counsel, cannot constitute cause."); Callins v. Johnson, 89 F.3d 210, 212 (5th Cir. 1996) ("[T]here is no constitutional right to counsel in habeas proceedings."). Accordingly, Ogan's request for a COA on this issue is denied.[5]

B.      Competency to Stand Trial

---

[5]Ogan also argues in depth that, whereas ordinarily the conduct of an attorney is imputed to the client, the conduct of his state habeas counsel should not be imputed to him. He provides several instances in which his state habeas counsel demonstrated incompetency. He notes that habeas counsel did not investigate the possibility of an ineffective-assistance-of-trial counsel claim; that habeas counsel did not obtain and review trial counsel's files or speak to counsel; that habeas counsel was not aware of basic habeas procedural rules; that habeas counsel filed an inadequate writ application, containing only a boilerplate claim that he had raised before and that he "cut and pasted" to Ogan's writ application; that habeas counsel failed to elaborate on the argument in Ogan's writ application; and that the application was only nine pages long. It is apparent that Ogan is attempting to do indirectly what the law precludes him from doing directly, i.e., asserting an ineffective assistance of habeas counsel claim. Since Ogan does not have a constitutional right to effective habeas counsel, we find that this argument must fail.

11

In the court below, Ogan argued that he was incompetent to stand trial. The district court correctly determined that Ogan failed to raise this argument on direct appeal to the Texas Court of Criminal Appeals or during the state habeas proceedings. Thus, Ogan's claim is procedurally defaulted unless he can demonstrate cause and actual prejudice. Ogan appears to assert that there was cause for his procedural default on two bases: (1) the ineffectiveness of his state habeas counsel, and (2) the Texas state courts' violation of his constitutional rights by allowing ineffective counsel to represent him. As stated previously, these claims do not constitute cause for purposes of the exception to the procedural default rule. Jones, 171 F.3d at 270. Therefore, Ogan's request for a COA on the issue of his competency to stand trial is also denied.

C.    Failure to Realize the Extent of Ogan's Mental Health Problems

In his federal habeas petition, Ogan claimed that his trial counsel was ineffective for failing to recognize the extent of his mental health problems. The district court ruled that this claim was procedurally defaulted. The court noted that although Ogan presented a claim to the state habeas court that pertained to trial counsel's failure to retain a mitigation expert, he did not raise the present claim, which focuses on the effect that his mental health problems may have had on his ability to guide his own defense. Thus, the court determined that the ineffective assistance claim regarding his mental health problems would be dismissed under Texas law as an abuse of writ.[6]

---

[6]Under the Texas Code of Criminal Procedure article 11.071 § 5, a capital defendant may not file multiple applications for review unless he can show that (1) the factual or legal basis of the claim was unavailable on the date of the previous application or the last date for timely filing of an application, or (2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror would have answered in the state's favor to one or more of the special issues. Since Ogan's ineffective assistance of counsel claim does not fall within either of these exceptions, any application filed would be dismissed as an abuse of writ. We have held that claims are procedurally barred on federal habeas review if the petitioner would be precluded from exhausting the same claims in state court by the abuse-of-the-writ doctrine of Article 11.071 of the Texas Code

12

A review of the record reveals that Ogan did not raise this claim with the Texas courts. Ogan's claim in his state habeas application pertained to trial counsel's failure to have a mitigation expert testify, not counsel's failure to recognize that his participation in his defense was colored by his alleged mental illness. Because Ogan is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted. Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998). ("The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court. . . . A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."); see also Dispensa v. Lynaugh, 847 F.2d 211, 217 (5th Cir. 1988) (stating that this circuit "has consistently held that a federal habeas petitioner has failed to exhaust his state remedies when he relies on a different legal theory than he did in state court or when he makes the same legal claim to a federal court but supports the claim with factual allegations that he did not make to the state court"). Furthermore, Ogan has wholly failed to demonstrate cause or prejudice for his default. Accordingly, Ogan is not entitled to a COA on this claim.

III.     Jury Instructions on Mitigation

Lastly, Ogan argues that his trial counsel was ineffective in failing to request an adequate and accurate jury instruction on mitigating evidence and in failing to object to the "nullification instruction" given by the trial court during the sentencing phase. On direct review, the Texas Court of Criminal Appeals rejected Ogan's claim. The court determined that the aggravating and mitigating

_____

of Criminal Procedure. Horsley v. Johnson, 197 F.3d 134, 137 (5th Cir. 1999).

13

evidence did not rise to the level of Penry[7] evidence and that the evidence was properly submitted for the jury's consideration. Also, the district court rejected Ogan's claim, finding that the trial court's instruction to the jury met the requirements of Penry.

At the close of the penalty phase of Ogan's trial, the court instructed the jury on mitigating evidence in addition to the Texas special issues. Specifically, the mitigation instruction stated:

> You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background, record, emotional instability, intelligence, or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, and thereafter, give effect and consideration to them in assessing the defendant's personal culpability, at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, then a negative finding should be given to that special issue under consideration.

Ogan's counsel requested that the trial judge include the mitigating circumstances of "intelligence" and "emotional instability" in the jury instruction. The judge declined the opportunity to include any more specific instructions on mitigating circumstances.

Recently, on June 4, 2001, the United States Supreme Court held constitutionally inadequate an instruction, in conjunction with the three Texas special issues, nearly identical to the above instruction. See Penry v. Johnson, 532 U.S. 782, 804 (2001) (Penry II).[8] Specifically, the Court

---

[7]See Penry v. Lynaugh, 492 U.S. 302 (1989) (Penry I).

[8] The supplemental instruction given in Penry II provides as follows:

> If you find that there are any mitigating circumstance, you must decide how much weight they deserve, if any, and therefore, give effect and consideration

14

stated:

> The three special issues submitted to the jury were identical to the ones we found constitutionally inadequate as applied in <u>Penry I</u>. Although the supplemental instruction made mention of mitigating evidence, the mechanism it purported to create for the jurors to give effect to that evidence was ineffective and illogical. The comments of the court and counsel accomplished little by way of clarification. Any realistic assessment of the manner in which the supplemental instruction operated would therefore lead to the same conclusion we reached in <u>Penry I</u>: "[A] reasonable juror could well have believed that there was no vehicle for expressing the view that Penry did not deserve to be sentenced to death based upon his mitigating evidence."

<u>Id.</u> (alteration in original). The jury instructions given in Ogan's case may raise Eighth Amendment concerns under this recent Supreme Court precedent. However, Ogan presents this claim as a Sixth Amendment ineffective-assistance-of-counsel claim, and it must be analyzed accordingly.[9] In order to establish ineffective assistance of counsel, Ogan must prove (1) deficient performance, which requires a showing that counsel's representation "fell below an objective standard of reasonableness," and (2) that the deficient performance resulted in actual prejudice. <u>Strickland v. Washington</u>, 466

---

> to them in assessing the defendant's personal culpability at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant a negative finding should be given to one of the special issues.

<u>Id.</u> at 782-83.

[9]As a side note, we are aware of the Supreme Court's recent decision in <u>Atkins v. Virginia</u>, No. 00-8452, 2002 WL 1338045, at * 1 (U.S. June 20, 2002), which announced that executing mentally retarded defendants violates the Eighth Amendment prohibition against "cruel and usual punishment." However, this decision has no impact on our ruling today because Ogan has not alleged that he suffers from mental retardation, nor has he asserted any violations of the Eighth Amendment.

U.S. 668, 688, 692 (1984). In Strickland, the Supreme Court directs reviewing courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. As the Court stated "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. "The determination whether the performance of counsel was deficient is based upon the law as it existed at the time of trial." Lucas v. Johnson, 132 F.3d 1069, 1078 (5th Cir. 1998) (citing Lockhart v. Fretwell, 506 U.S. 364, 371 (1993)).

When Ogan's trial took place, the Supreme Court had not yet decided whether the supplemental instruction given during Penry's second trial was sufficient to remedy the constitutional infirmities that the Court found existed in his first trial. Ogan's trial counsel did not have the benefit of the Supreme Court's guidance in Penry II, and we have held that "counsel is not required to anticipate subsequent developments in the law." Lucas, 132 F.3d at 1078-79; see also Gray v. Lucas, 677 F.2d 1086, 1096 (5th Cir. 1982) (holding that trial counsel's failure to object to the prosecutor's interjection of future dangerousness through expert testimony did not constitute deficient performance where this circuit's ruling discrediting such testimony was decided three years after trial). We find that counsel's failure to object to the supplemental instruction given at the conclusion of the sentencing phase of Ogan's trial was not objectively unreasonable. In fact, prior to the Supreme Court's ruling in Penry II, we had consistently approved supplemental mitigating evidence instructions similar to the instruction given in this case. See Emery v. Johnson, 139 F.3d 191, 200 (5th Cir. 1997); Miller v. Johnson, 200 F.3d 274, 290 (5th Cir. 2000).

In Emery, the petitioner was sentenced to death under the same version of article 37.071 of

16

the Texas Code of Criminal Procedure used in Ogan's trial. At the conclusion of the punishment phase, the trial court gave the following instruction:

> [Y]our answers to the Special Issues, which determine the punishment to be assessed the defendant by the court, should be reflective of your finding as to the personal moral culpability of the defendant in this case. When you deliberate about the questions posed in the Special Issues, you are to consider any mitigating circumstances supported by the evidence presented in both phases of the trial. A mitigating circumstance may be any aspect of the defendant's background, character, and record, or circumstances of the crime, which you believe makes a sentence of death inappropriate in this case. If you find that there are any mitigating circumstances, you must decide how much weight they deserve and give them effect when you answer the special issues. If you determine, in consideration of this evidence, that a life sentence, rather than a death sentence, is an appropriate response to the personal moral culpability of the defendant, you are instructed to answer the Special Issue under consideration "No."

Id. at 200. We concluded that

> [t]his instruction allowed the jury to consider any appropriate mitigating circumstance, . . . and required the jury not to sentence [the petitioner] to death if a life sentence was appropriate in light of his moral culpability. The instruction adequately addressed the Court's concerns about Texas's death penalty scheme by giving the jury the ability to consider any appropriate mitigating circumstance.

Id. We would be hard pressed to now find that trial counsel's decision not to object to the supplemental instruction given in Ogan's case, in light of the pre-Penry II rulings of this court, constituted deficient performance under Strickland. Because we find that Ogan has failed to demonstrate deficient performance, he has not met the first prong of the Strickland inquiry. We conclude therefore that Ogan has not substantially shown the denial of his right to effective assistance of counsel. Thus, his application for a COA on this issue is denied.

## CONCLUSION

For the reason stated herein, we find that the district court properly refused to grant habeas relief to Ogan.

17

AFFIRMED.