**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 7, 2009

Charles R. Fulbruge III
Clerk

No. 07-20336

JAMES NEWTON BEEDE,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:05-CV-4035

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

James Beede was convicted of murder and sentenced to life in prison. He appeals the denial of his petition for writ of habeas corpus, and we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

After an evening of drinking at a strip club, Beede, his ex-girlfriend Kellie Ard, and his friend Sandy Joe Walker found themselves on a road near an oil rig. Knowing that Beede wanted to confront Ard about a missing tattoo gun that he thought she had stolen, Walker left to inquire about job opportunities at the rig. When he returned, Ard's dead body was lying on the side of the road, and Beede told him that "I think I killed Kellie" and explained that he had hit her too hard with a tire tool.

The police soon arrested Beede. In jail, he confessed to his girlfriend that he had killed Ard. He also gave a written statement admitting to the events of the evening but said he recalled only hitting Ard with his hand a few times and then he "blacked out"; when he awoke, she was lying dead on the ground.

Beede was prosecuted for murder. After the jury had found him guilty, and while it was deliberating on punishment, the trial judge learned that one of the jurors had left a message for him on the court's answering machine the night before. Although the record reflects that a recording of the message was introduced as an exhibit, it appears to have been lost,[1] so we have no evidence of its content.[2] Beede avers that it was a juror's reporting that the victim's father had

---

[1] In a fruitless attempt to locate the exhibit, the state contacted the County Clerk's Office, the District Attorney's Office, and Beede's trial counsel.

[2] The only record evidence we have regarding the message is the following colloquy between the judge and Beede's counsel, Mr. Osso:

> MR. OSSO: It was brought to our attention that one of the jurors, I believe it was No. 17, had called the Court and left a phone message for the Judge, and I believe it was last evening. We have a tape recording of this conversation. By agreement with the prosecutor, the court reporter is going to recopy that tape recording which is in possession of the coordinator. I'd move to introduce it as part of the record and label it as Defense No. 5.
>
> THE COURT: It's admitted. I want to make it clear for the record that we have in this court an answering machine. We don't check the answering machine until later on in the day and apparently that message was not collected. I didn't

(continued...)

contacted him during the trial.

After an unsuccessful direct appeal, Beede filed, *pro se*, a state application for writ of habeas corpus. He argued, *inter alia*, (1) that his due process rights were violated by the trial court's failure to hold a hearing to determine the impact of any improper communication between the victim's father and the juror and (2) that his right to counsel was violated by his lawyer's failure to raise that issue during trial or on appeal. The habeas court determined that the former claim was procedurally barred, because any concern about tampering should have been addressed on direct appeal and could not be raised in a habeas application. The court rejected the latter claim, concluding that Beede had "fail[ed] to demonstrate that trial and appellate counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different." The Texas Court of Criminal Appeals ("TCCA") affirmed without written order.

Beede, still *pro se*, then filed a federal habeas petition that reasserted, *inter alia*, his ineffective assistance-of-counsel and jury-tampering claims. The district court, finding that the ineffective assistance of counsel claim was meritless and that the tampering claim was procedurally barred, entered summary judgment for the state. We granted a certificate of appealability on three issues: (1) "whether counsel, at the trial level and on direct appeal, provided ineffective assistance by omitting a challenge to the alleged jury tampering matter[,]"

---

[2] (...continued)
become aware of this message until after the jury had already rendered its verdict on guilt or innocence and were out on punishment. I just want to make the record clear on that point. Is there anything else?

MR. OSSO: No, Your Honor.

THE COURT: I made it immediately known to Counsel and they listened to it the same time I did. I'm going to appoint Mr. Osso on the appeal.

(2) "whether the jury tampering claim is procedurally barred," and (3) "whether the district court erred in dismissing Beede's jury tampering claim and his related ineffective assistance claims without conducting an evidentiary hearing." *Beede v. Quarterman*, NO. 07-20336 (5th Cir. May 7, 2008).

## II.

We review a summary judgment *de novo*. *Ogan v. Cockrell*, 297 F.3d 349, 355-56 (5th Cir. 2002). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "when a federal habeas petitioner's claim has been adjudicated on the merits in a state court proceeding, a federal court may only grant habeas relief if the state court's adjudication of the claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) resulted in a decision that was based on an unreasonable interpretation of the facts in light of evidence presented in the state court proceeding." *Rogers v. Quarterman*, 555 F.3d 483, 488 (5th Cir. 2009) (citing 28 U.S.C. § 2254(d)(1), (2)). "A state court decision is contrary to clearly established Supreme Court precedent if: (1) 'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases,' or (2) 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Coble v. Quarterman*, 496 F.3d 430, 435 (5th Cir. 2007) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)). "A state court's incorrect application of clearly established Supreme Court precedent is not enough to warrant federal habeas relief; in addition, such an application must also be unreasonable." *Id.*

## A.

Ineffective-assistance-of-counsel claims are governed by the familiar stan-

dards of *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail, a petitioner "must establish: (1) 'that counsel's representation fell below an objective standard of reasonableness' and (2) that the deficient representation caused prejudice, which requires a showing that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Coble*, 496 F.3d at 435 (quoting *Washington*, 466 U.S. at 688, 694).

In his federal petition, Beede reasserts claims already rejected on the merits by the TCCA: that trial counsel was deficient for failing to request a jury voir dire and that appellate counsel was deficient for failing to raise the issue on appeal. Under AEDPA, the question is therefore whether the TCCA's denial of habeas relief was an objectively unreasonable application of the *Washington* standard. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).

There is nothing in the record to support Beede's allegation of jury tampering. The record shows only that a juror left a message on the trial judge's answering machine but does not contain any information about the content of that message, let alone that the victim's father contacted a juror. We nonetheless recognize that, through no fault of Beede's, the record is missing a transcript of the message.

Even assuming the accuracy of Beede's assertions,[3] however, he has not overcome our AEDPA deference to the TCCA's decision. He argues that, under *Remmer v. United States*, 347 U.S. 227, 229 (1954), any improper contact with a juror creates a presumption of prejudice that the state must rebut. But in the years since *Remmer*, the Supreme Court has "backed away from this position, indicating that the presumption of prejudice and the assignment of the burden

---

[3] As the district court explained, "Petitioner's allegations do not assert that there was a conversation between the juror and the [complainant]'s father, as opposed to the father leaving a message with the juror's spouse, boss, co-worker, or answering machine. If there was a conversation, Petitioner's allegations do not assert anything about the length, nature, or content of the conversation."

of proof are not triggered automatically but are imposed at the discretion of the district court." *United States v. Sylvester*, 143 F.3d 923, 933 (5th Cir. 1998). We have similarly emphasized "that the trial judge is in the best position to evaluate accurately the potential impact of the complained-of outside influence" and that the court need not conduct a "full-blown evidentiary hearing in every instance in which an outside influence is brought to bear upon a petit jury." *United States v. Ramos*, 71 F.3d 1150, 1153-54 (5th Cir. 1995). Instead, the court "must balance the probable harm resulting from the emphasis such action would place upon the misconduct and the disruption involved in conducting a hearing against the likely extent and gravity of the prejudice generated by the misconduct." *Id*. at 1153 (quoting *United States v. Chiantese*, 582 F.2d 974, 980 (5th Cir. 1978)).

Beede therefore has not shown that the TCCA's rejection of his ineffective assistance of counsel claim was an objectively unreasonable application of *Washington*. The TCCA reasonably could have concluded that counsel's performance fell "within the wide range of reasonable professional assistance," *Washington*, 466 U.S. at 689, and that any deficiency was non-prejudicial.

## B.

Beede argues that his due process rights were violated by the alleged jury tampering. When he raised the same claim in state court, the TCCA concluded it was procedurally defaulted under state law because it should have been raised on direct appeal of his conviction.[4] Where a state court has dismissed a claim on state procedural grounds, that claim is also procedurally barred in federal court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

---

[4] *See Ex Parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004) ("Even a constitutional claim is forfeited if the applicant had the opportunity to raise the issue on appeal.").

consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Beede contends that his counsel's failure to raise the claim on appeal caused the default. He is correct that lawyer error may excuse a procedural default, but those errors must constitute constitutionally ineffective assistance of counsel.[5] As discussed above, Beede has no viable claim for ineffective assistance of counsel, so his procedural default is not excused, and his jury-tampering claim is procedurally barred in federal court.

## C.

Finally, because summary judgment was appropriate even assuming Beede could prove his allegations regarding the answering machine message, the district court did not err in denying an evidentiary hearing. Beede's claim to the contrary has no merit.

The judgment is AFFIRMED.

---

[5] *See Murray v. Carter*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington,* we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").