IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-10133
_____

CAMERON TODD WILLINGHAM,

Petitioner-Appellant,

versus

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No.:  3:98-CV-409-L
_____

February 17, 2003

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, CIRCUIT JUDGE:[1]

Cameron Todd Willingham was convicted of capital murder and
sentenced to death.   He seeks a Certificate of Appealability
("COA") to appeal the district court's denial of federal habeas
relief.  For the reasons that follow, we DENY a COA.

I

On December 23, 1991, Willingham's one-year-old twin daughters
and his two-year-old daughter died of smoke inhalation when the
family's residence burned.   Willingham, who escaped the burning
residence, was charged with capital murder of the children.   The

_____

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

State presented evidence, including Willingham's confession to an inmate, that Willingham poured an accelerant on the floor of the twins' bedroom, the floor of the hallway outside their bedroom, and around the front door and lit three separate fires. There was also evidence that, before setting the fires, he burned his two-year-old daughter's arm and forehead so as to make it appear that the fire was caused by the child playing with fire.

The jury found Willingham guilty of capital murder. He was sentenced to death based on the jury's affirmative answer to the special punishment issue on future dangerousness and its negative answer to the special punishment issue on mitigating circumstances. The Texas Court of Criminal Appeals affirmed his conviction and sentence on direct appeal, and the Supreme Court denied certiorari. Willingham v. State, 897 S.W.2d 351 (Tex. Crim. App.), cert. denied, 516 U.S. 946 (1995).

In December 1996, Willingham filed an application for state habeas relief. The Texas Court of Criminal Appeals adopted the trial court's recommendation that relief be denied, and the Supreme Court denied certiorari. Ex parte Cameron Todd Willingham, No. 35,162 (Tex. Crim. App. Oct. 1, 1997), cert. denied, 524 U.S. 917 (1998).

Willingham filed a petition for federal habeas relief in April 1998. The magistrate judge recommended that relief be denied. The district court overruled Willingham's objections to the magistrate

2

judge's report and recommendation and denied relief. <u>Willingham v. Johnson</u>, 2001 WL 1677023 (N.D. Tex. Dec. 31, 2001). The district also denied Willingham's request for a COA.

## II

He has now filed in this court his "Application for Certificate of Appealability," in which he lists eight issues: (1) whether his right to due process was violated when he was denied the right to represent himself on appeal; (2) whether he received ineffective assistance of counsel on direct appeal as a result of his counsel's failure to raise issues regarding the erroneous exclusion of several jurors for cause, the improper introduction of hearsay testimony, and the improper questioning of at least two witnesses for the State; (3) whether the district court erred by holding that there was no error in the exclusion of two jurors based on their beliefs about the death penalty; (4) whether the district court erred by holding that there was no error in the trial court's restriction of Willingham's questioning of a prospective juror; (5) whether the district court erred by holding that hearsay statements made by Willingham's wife were properly admissible as impeachment evidence; (6) whether the district court erred by holding that the opinion testimony of the State's expert witness was admissible; (7) whether the Texas death penalty scheme is unconstitutional because it fails to provide for meaningful appellate review; and (8) whether Willingham's rights to due

3

process and equal protection were violated because the jury was not instructed on the effect that Texas parole law would have on his sentence. He did not, however, brief issues (3), (4), (5), and (6) in his brief in support of his COA application (although the subject matter of these issues is addressed in relation to his ineffective assistance of counsel claim). Accordingly, we address only the four COA requests that Willingham briefed. See Hughes v. Johnson, 191 F.3d 607, 613 (5th Cir. 1999) (issues not raised in brief in support of COA application are waived), cert. denied, 528 U.S. 1145 (2000)

A

Standard of Review

To obtain a COA, Willingham must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, he must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For those claims on which the district court has denied relief on the merits, Willingham "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.

4

"[T]he determination of whether a COA should issue must be made by viewing [Willingham]'s arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir. 2000), cert. dismissed, 121 S.Ct. 902 (2001). When a claim has been adjudicated on the merits in state court, a federal habeas court must defer to the state court's decision unless it "[is] contrary to, or involve[s] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... [is] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). A decision is "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States" "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision "involve[s] an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States" "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The state court's factual findings are accorded a presumption of correctness

that Willingham may rebut only by "clear and convincing evidence."
28 U.S.C. § 2254(e)(1).

B

<u>Denial of the Right to Self-Representation</u>

We address first Willingham's request for a COA for his claim that his right to due process was violated when he was denied the right to represent himself on appeal. Willingham's appointed counsel filed his brief on direct appeal on January 11, 1993. Five months later, prior to the filing of the State's brief, Willingham filed a motion to strike his appointed counsel's brief and to proceed <u>pro</u> <u>se</u> on appeal. In that motion, he asserted that the brief filed by his appellate counsel did not reflect the true merits of his case. He did not, however, specify the issues he wanted to raise. In support of his motion, Willingham submitted an affidavit in which he indicated his belief that he was able to prepare a brief and waived his right to the assistance of counsel. The Court of Criminal Appeals denied Willingham's motion. Willingham argues that this violated his constitutional right to represent himself on appeal.

The state habeas trial court denied relief for this claim on the ground that Willingham was attempting to use his right of self-representation to obstruct the orderly procedure in the courts and the fair administration of justice. See <u>Webb v. State</u>, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976) (holding that a criminal defendant

6

has the right to represent himself on appeal, but that the "right of self-representation is not a license to capriciously upset the appellate timetable or to thwart the orderly and fair administration of justice"; and declining to rule on appellant's pro se motions that were filed long after his appointed counsel had filed an appellate brief).

The district court denied this claim on the merits, in the light of Martinez v. Court of Appeal, Fourth Appellate District, 528 U.S. 152 (2000), which was handed down subsequent to the state habeas court's ruling. In Martinez, the Supreme Court held that there is no federal constitutional right to self-representation on direct appeal from a criminal conviction. Id. at 163.[2]

Willingham argues that Martinez does not foreclose his claim, because Martinez is based on the assumption that states will consider pro se arguments, in addition to those raised by counsel. See Martinez, 528 U.S. at 164 (observing that "the rules governing appeals in California, and presumably those in other States as well, seem to protect the ability of indigent litigants to make *pro*

---

[2]In Faretta v. California, 422 U.S. 806, 807 (1975), the Supreme Court held that a criminal defendant has a Sixth Amendment right to represent himself at trial. Based on Faretta, our court held in 1993 (seven years prior to Martinez), that a state criminal defendant has a constitutional right to present pro se briefs and motions on appeal. See Myers v. Collins, 8 F.3d 249, 252 (5th Cir. 1993). In the light of Martinez, which held that the Sixth Amendment does not apply to appellate proceedings, and which cited Myers as one of the cases expressing conflicting views on the issue, this aspect of Myers is no longer valid and is thus inapplicable to our resolution of Willingham's COA request.

7

*se* filings"). He maintains that, because Texas refuses to consider pro se arguments in addition to those raised by counsel, he can still establish a due process violation, notwithstanding Martinez.

The State argues that this claim is foreclosed by Martinez. It contends further that this claim is barred by the non-retroactivity doctrine of Teague v. Lane, 489 U.S. 288 (1989). See Vega v. Johnson, 149 F.3d 354, 361-62 (5th Cir. 1998) (holding that Myers created a new rule of constitutional law that was not applicable on collateral review, and that a rule establishing the extent and requirements of the right of self-representation on appeal would be a new rule barred by Teague). Finally, the State argues that this claim is procedurally barred because the state habeas court found that Willingham waived his right to self-representation when he accepted the assistance of counsel, allowed counsel to file an appellate brief, and then waited at least five months to assert his wish to proceed pro se.

In the light of Martinez, Willingham cannot demonstrate that reasonable jurists would find the district court's assessment of this claim "debatable or wrong." See Slack, 120 S.Ct. at 1604. Notwithstanding its observations about the ability of indigent litigants to make pro se filings under state appellate rules, the Supreme Court's refusal to recognize a due process right to self-representation on appeal is not conditioned on the appellant's ability to make such filings. The imposition of such a condition

8

on collateral review is not permitted under <u>Teague</u>.  Accordingly, Willingham's request for a COA for this claim is denied.

C

<u>Ineffective Assistance of Counsel on Direct Appeal</u>

Next, we consider Willingham's request for a COA for his claim that he received ineffective assistance of counsel on direct appeal.  Willingham's appointed counsel argued on direct appeal that:  the evidence was insufficient to support the jury's answers to the special issues at the punishment phase; the trial court erred by denying the defense motion to change venue; the trial court erred in refusing to admit impeachment testimony; and the trial court erred by refusing to instruct the jury on parole law. Willingham argues that his appellate counsel rendered ineffective assistance by failing to argue, in addition, that:  (1) the trial court erred by granting the State's challenges for cause of prospective jurors Allen and Ovalle; (2) the trial court erred by limiting voir dire examination of prospective juror Ovalle; (3) the trial court erred by admitting hearsay testimony; and (4) the trial court erred by admitting improper expert testimony.

Willingham's ineffective assistance claim is governed by the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain a COA for this claim, Willingham must make a substantial showing that his appellate counsel performed deficiently and that the deficient performance prejudiced his

9

defense. Prejudice is demonstrated if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Accordingly, to establish prejudice, Willingham must show a reasonable probability that he would have prevailed on his appeal had counsel raised the omitted claims. Smith v. Robbins, 528 U.S. 259, 285-87 (2000). The Constitution does not require an appellate attorney to advance every conceivable argument, regardless of merit. Evitts v. Lucey, 469 U.S. 387, 394 (1985). Instead, counsel is required to raise and brief only those issues which are believed by counsel, in the exercise of professional judgment, to have the best chance of success. See Jones v. Barnes, 463 U.S. 745, 751-52 (1983).

We now turn to examine each of the issues that Willingham contends his counsel should have raised on direct appeal.

1

Exclusion of Jurors for Cause

Willingham seeks a COA for his claim that his appellate counsel rendered ineffective assistance by failing to argue on appeal that the trial court erred by granting two of the State's challenges for cause during voir dire.

When questioned by the prosecutor, prospective juror Ovalle testified that she could not vote for the imposition of the death

10

penalty and that this was a firm belief that she had held for a long time. She stated that, because of her belief, she could not vote in favor of the death penalty, regardless of what the evidence might be, and that she would automatically vote against the death penalty. She testified further that her feelings against the death penalty were so strong that they would interfere with her ability to vote to convict someone of capital murder, knowing that she would later face the decision regarding the death penalty. Finally, she testified that her views on capital punishment would substantially impair her duties as a juror and might keep her from following the court's instructions. When questioned by defense counsel, Ovalle stated that she would consider her oath as a juror to be binding and that, if she took an oath to follow the law, she would do so. She testified further that she thought she could answer the special issues based on the evidence, despite her views about the death penalty. When questioned again by the State, however, Ovalle reiterated that she could not vote to impose the death penalty.

Prospective juror Allen also did not believe in capital punishment. She testified that her belief was based on moral and religious reasons, that she had strong feelings about the subject, and that she had never felt differently. She testified that, because of her beliefs, she would answer the special punishment issues in such a manner that the death penalty could not be

11

imposed, regardless of the evidence. She agreed that it would be impossible for her to swear that she would render a verdict solely on the law and evidence in a case where the death penalty was involved. She also indicated that her views about the death penalty would interfere with her ability to render a fair verdict at the guilt-innocence phase, knowing that she would face the decision of the death penalty if the defendant were convicted. When questioned by defense counsel, Allen stated that she thought she could answer the special punishment issues based on the evidence, and that she would not intentionally disregard her oath because of her opposition to the death penalty. When questioned again by the State, however, Allen stated that she could not base her verdict on the evidence if it involved the death penalty.

The Supreme Court has held that a prospective juror may be excused for cause in a capital case when the juror's views on the death penalty are such that they "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985) (internal quotation marks and citation omitted). It is improper, however, to excuse a juror for cause when the juror would approach a death penalty case with greater care or caution or where the decision would involve him emotionally. Adams v. Texas, 448 U.S. 38, 49-50 (1980). Because the trial judge has the opportunity to see and hear the prospective jurors, we give deference to the

12

trial judge's credibility determinations. <u>Wainwright</u>, 469 U.S. at 425-26.

The state habeas trial court denied relief on Willingham's claim that the trial court erred by granting the State's challenges for cause, observing that the prospective jurors' responses to questioning showed that their views on the death penalty would substantially impair the performance of their duties in accordance with the court's instructions and the jurors' oath. It denied Willingham's claim that he received ineffective assistance of appellate counsel for the same reason.

In assessing the ineffective counsel claim, the district court held that Willingham was not prejudiced, because there was not a reasonable probability that the outcome of the appeal would have been different if his appellate counsel had raised the issue. The district court's assessment of this claim is neither debatable nor wrong, because the state court's decision is not contrary to federal law and is not based on an unreasonable application of the law or an unreasonable determination of the facts. Essentially, any such claim would have been meritless as an appellate issue. Both of the prospective jurors stated more than once that, because of their opposition to the death penalty, they could not render a verdict based solely on the evidence at trial. Although, when questioned by defense counsel, both of them said that they thought they could follow their oaths and answer the punishment issues

13

based on the evidence, they both reiterated, in response to further questioning by the prosecutor, that they could not vote in such a way as to impose the death penalty. Because both of the prospective jurors held views about the death penalty that would have substantially impaired them in fulfilling their duties as jurors, the trial court was well within his discretion in granting the State's challenges for cause. Accordingly, Willingham cannot show that he was prejudiced by counsel's alleged failing: There is not a reasonable probability that Willingham would have prevailed on appeal had the issue been raised.

2

Limitation of Voir Dire

Willingham also seeks a COA for his claim that his appellate counsel rendered ineffective assistance by failing to argue on appeal that the trial court erred by refusing to allow counsel to ask prospective juror Ovalle whether, irrespective of her personal beliefs, she could follow the law and decide the punishment issues based upon the evidence. He contends that, had counsel been allowed to ask this question, he could have shown that Ovalle could answer the questions truthfully based on the evidence and thus defeat a challenge for cause.

The state habeas trial court rejected this claim on the ground that Willingham was not prejudiced, because a similar question had already been asked, answered, and considered by the court. The

14

district court held that, in the light of the fact that defense counsel had asked Ovalle essentially the same question earlier and the fact that many of Ovalle's previous answers to questions indicated that she could not render a verdict based on the law and the evidence, the trial court did not abuse its discretion by refusing to permit Willingham's counsel to ask the question.

Willingham is not entitled to a COA for this claim because the district court's assessment of this claim is neither debatable nor wrong.  Consequently, Willingham has not made a substantial showing that he was prejudiced by his counsel's failure to raise this issue on appeal; there simply is not a reasonable probability that the outcome of the appeal would have been different had the issue been raised.  As the state habeas court and the district court observed, the question that defense counsel wanted to ask is duplicative of similar questions that had already been asked by defense counsel.

3

### Hearsay Testimony

Next, Willingham seeks a COA based on the failure of appellate counsel to argue that the trial court erred by admitting hearsay evidence at the punishment phase of his trial.  The testimony at issue was introduced to impeach the testimony of Willingham's wife, who was called by the State as a hostile witness during the punishment phase.  Willingham's wife testified that Willingham had never hurt her or her children, and that her children were not

15

afraid of him. She also denied that she had ever told Karen or Kim King that Willingham had beaten or kicked her while she was pregnant in an attempt to cause a miscarriage. She further denied that Willingham had ever made the statement, after they had separated, that it would be a good trade if she took their daughter and he took the videocassette recorder ("VCR").

Karen King was called by the State to impeach Willingham's wife. She testified that she had seen Willingham's wife with a "busted" lip, two black eyes, bruised legs, and a red spot on her stomach. She also testified that Willingham's wife told her that Willingham had beaten her and kicked her in the stomach while she was pregnant because, she believed, he wanted to cause a miscarriage.

The State also called Kim King as a witness. She testified that Willingham's wife had spoken to her about Willingham beating her while she was pregnant. She testified further that Willingham's wife told her that Willingham had stated that he wanted the VCR and that it would be a fair trade for their oldest daughter.

The trial court overruled defense counsel's hearsay objections to Karen and Kim King's testimony. The state habeas trial court held that Willingham failed to present a ground for relief that was cognizable on habeas review. Furthermore, it held that any error in admitting the testimony was harmless, because it was more

16

probable than not that the result would have been the same if the challenged testimony had been excluded. It denied Willingham's claim that he received ineffective assistance of appellate counsel for the same reason. The Texas Court of Criminal Appeals denied relief, but declined to adopt the trial court's findings of fact relating to this claim.

On federal habeas, the magistrate judge stated that Karen King's testimony regarding Willingham's wife's statement about the reason she thought Willingham had beaten her while she was pregnant was hearsay, but that the testimony was admissible to impeach Willingham's wife's testimony that she never made such a statement to either of the Kings. The magistrate judge noted that Willingham's counsel did not request a limiting instruction.

The magistrate judge stated that Karen King's testimony regarding Willingham's statement to his wife about trading the VCR for his daughter was inadmissible hearsay, because Willingham's wife did not deny that she had made such a statement to King. Instead, she denied that Willingham had ever made the statement to her. The magistrate judge concluded, however, that, as far as his ineffective counsel claim was concerned, Willingham was not prejudiced by counsel's failure to raise the issue on appeal, because there was not a reasonable probability that the appellate court would have found reversible error. Instead, the magistrate judge concluded that the appellate court would have found the error

17

harmless, because the jury would not have reached a different decision on punishment had the testimony been excluded. The magistrate judge reached this conclusion because of the horrific nature of the crime and the other evidence at the punishment phase -- including Willingham's extensive criminal background, his bragging about killing a dog, the other testimony given by the Kings regarding Willingham's wife's appearance after being beaten by Willingham, and testimony of a neighbor who witnessed Willingham slap his wife and who once helped Willingham's wife call the police about Willingham's violence.

The district court held that, even if the State knew before it called her as a witness, that it would impeach Willingham's wife's denial that she had been abused by Willingham, the State also elicited testimony from her that did not relate to the abuse. Accordingly, the district court concluded that the State did not improperly call Willingham's wife solely to impeach her. The district court therefore concluded that the trial court did not err when it admitted the hearsay statements for impeachment purposes, and that, as the matter related to his ineffective counsel claim, there was not a reasonable probability that the outcome of Willingham's appeal would have been different if his counsel had raised the issue. The district court noted that Willingham did not object to the magistrate judge's conclusion that he was not prejudiced by appellate counsel's failure to appeal the admission

18

of testimony regarding Willingham's statement that he would trade his daughter for a VCR. The district court concluded that Willingham was not prejudiced by the testimony, even if it were hearsay, because the testimony was insignificant in the light of other testimony regarding the nature of Willingham's relationship with his wife and children.

Willingham is not entitled to a COA for this issue, because the district court's assessment of this claim is neither debatable nor wrong. Willingham has not made a substantial showing that he was prejudiced by counsel's failure to raise this issue on direct appeal.

4

Expert Testimony

The last basis for Willingham's ineffective assistance of appellate counsel claim involves counsel's failure to appeal the admission of opinion testimony from the State's arson investigator, Vasquez. During the guilt phase of trial, Vasquez, a deputy state fire marshal and arson investigator, was called by the State as an expert witness. Vasquez testified that, based on the burn patterns and pour patterns and the stains on the concrete front porch, the fire was set intentionally with the use of an accelerant. He testified that he did not believe Willingham's two-year-old daughter could have started the fire, because the accelerant liquid was deliberately poured throughout the hallway and the bedroom, and

19

because the fire was started in three different places. He testified that Willingham had told him that his daughter had awakened him while he was sleeping, the bedroom was full of smoke, he kicked open the door with his bare foot, and he ran down the hallway and out the door. Vasquez testified that, in his opinion, Willingham's story was not true, because Willingham could not have exited the house after it was on fire and smoke had reached his bedroom without sustaining injury to his feet or substantial smoke inhalation damage. Finally, Vasquez testified that it was his opinion that Willingham started the fire.

Willingham argues that Vasquez's opinion that Willingham's story was "pure fabrication" was improper expert testimony regarding the ultimate issue in the case. He also argues that Vasquez was improperly permitted to testify that Willingham intentionally set the fire.

The state habeas trial court held that any error in admitting Vasquez's opinion testimony was harmless. It denied Willingham's claim that he received ineffective assistance of appellate counsel for the same reason. The Texas Court of Criminal Appeals denied relief, but did not adopt the trial court's findings of fact relating to this claim.

The magistrate judge concluded that Vasquez's testimony that the fire was intentionally set using an accelerant was proper expert testimony because that opinion was based on his specialized

20

knowledge about fires and their causes. The magistrate judge also concluded that Vasquez's testimony that Willingham fabricated the story about escaping the fire through the hallway was admissible opinion testimony. Although it embraced an ultimate issue, it was not testimony regarding the veracity of a witness, because Willingham did not testify at trial. Instead, Vasquez testified that he did not believe Willingham's story because, based upon his specialized knowledge, he did not believe that Willingham could have escaped the burning house without inhaling smoke and sustaining injuries to his bare feet. Although the magistrate judge concluded that Vasquez's opinion testimony regarding Willingham's guilt was admitted erroneously with respect to the ineffective counsel claim, he concluded that the Texas Court of Criminal Appeals would have found the error to be harmless had the issue been raised on appeal, considering the substantial circumstantial evidence of Willingham's guilt. That evidence included uncontroverted expert testimony from two fire experts that an accelerant was used to start the fire intentionally. In addition, there was testimony that Willingham refused to try to rescue his children from the fire; that he exhibited a lack of concern or grief in the hospital after the fire; that he did not sustain any substantial injuries; that he displayed a carefree attitude the day after the fire; that he told arson investigators on the day of the children's funeral that they might find something

21

on the floor of the twins' bedroom because he had poured cologne there prior to the fire; that on the day of the children's funeral he sought help from the arson investigators to find his dartboard in the ruins of his house; and that a container containing traces of kerosene was found on the porch and a similar petroleum distillate was found on the wood threshold of the front door. Moreover, there was testimony that, while in jail awaiting trial, Willingham confessed to an inmate that he started the fire in order to hide evidence of recent child abuse. Finally, in addition to the one inadmissible opinion given by Vasquez, he also gave admissible opinion testimony that a child could not have set the fire and that Willingham's story did not match the physical evidence and was contradicted by his lack of injuries. The magistrate judge concluded that because the opinion testimony was either admissible or harmless, Willingham could not establish any prejudice as the result of his appellate counsel's failure to raise the issue. The district court agreed with the magistrate judge that Willingham was not prejudiced by his appellate counsel's failure to raise the issue on appeal, because any error would have been harmless in the light of the substantial evidence of Willingham's guilt.

Willingham is not entitled to a COA for this issue because the district court's assessment of this claim is neither debatable nor wrong. Even assuming that some of Vasquez's testimony was admitted

erroneously, he cannot establish the second prong of his ineffective counsel claim: There is not a reasonable probability that the Texas Court of Criminal Appeals would have found the error to be prejudicial to the outcome of the case had the issue been raised on direct appeal.

## 5

### Summary

In sum, Willingham is not entitled to a COA for his claim that his appellate counsel rendered ineffective assistance. Willingham has not made a substantial showing that there is a reasonable probability that counsel's failure to raise the issues on direct appeal would have affected the outcome of his appeal.

## D

### Constitutionality of Texas Death Penalty Statute

Willingham also seeks a COA for his claim that the Texas death penalty scheme is unconstitutional because the Texas Court of Criminal Appeals will not review the sufficiency of the evidence supporting the jury's answer to the special punishment issue on mitigating evidence. Willingham argues that this results in the jury being given unlimited discretion in choosing whether to assess the death penalty, in violation of the Eighth and Fourteenth Amendments. Willingham does not deny that this claim is foreclosed by our precedent, but states that he is raising it to preserve the opportunity to present the issue to the Supreme Court. See Woods

23

v. Cockrell, 307 F.3d 353, 358-60 (5th Cir. 2002); Moore v. Johnson, 225 F.3d 495, 505 (5th Cir. 2000), cert. denied, 532 U.S. 949 (2001).

E

Jury Instruction on Parole

Finally, Willingham requests a COA for his claim that his constitutional rights were violated by the trial court's refusal to instruct the jury that he would be ineligible for parole for thirty-five years if sentenced to life imprisonment. As Willingham acknowledges, he is not entitled to a COA for this claim because it is foreclosed by Fifth Circuit precedent. See Miller v. Johnson, 200 F.3d 274, 290 (5th Cir.), cert. denied, 531 U.S. 849 (2000). He raises the issue in order to preserve the opportunity to present it to the Supreme Court.

III

For the foregoing reasons, Willingham's application for a COA is

D E N I E D.