**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-50193

BOBBY WAYNE WOODS,

Petitioner - Appellant,

VERSUS

JANIE COCKRELL, Director,
Texas Department of Criminal Justice,
Institutional Division,

Respondent - Appellee.

Appeal from the United States District Court
For the Western District of Texas, Austin Division

September 24, 2002

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Petitioner Woods, a Texas state death penalty inmate, requests a certificate of appealability ("COA") under 28 U.S.C. §§ 2253 - 2254 on two issues. First, whether the standard of review used by the Texas Court of Criminal Appeals when reviewing the sufficiency of the evidence relating to the jury's determination of the special issue of future dangerousness, and whether its refusal to review

1

the trial jury's determination of the sufficiency of mitigating evidence at all, violates constitutional due process and equal protection.  Second, whether the Texas trial court, upheld by the appellate court, erred in refusing to instruct the jury pursuant to *Simmons v. South Carolina*, 512 U.S. 154 (1994).  We deny Woods's request on each issue.

## I.  Background.

In the early morning hours of April 30, 1997, Woods went to the house of his former girlfriend, Schwana Patterson, in Granbury, Texas.  Though they had previously lived together, the two had split up.  Woods later admitted to having used drugs before going to the house, including "crank" and PCP.  Schwana was not at home when Woods arrived, but he found an open window into the bedroom where Schwana's two children, Sarah, 11, and Cody, nine, were sleeping.  He grabbed Sarah by the foot; Cody awoke to Sarah's screams as Woods beat her chest.

He forced the two children to leave through the window in their nightclothes.  Later investigation found Woods's semen on Sarah's bedcover, indicating that he had had sexual contact with her. This was borne out in other evidence, including statements by Woods himself, Sarah's friends, notes she had left in her diary indicating that she hated Woods and wanted him gone, and that she had contracted the sexually-transmitted disease Human Papilloma Virus ("HPV").  Woods was also infected with HPV.  When Sarah's

body was later found, forensic evidence including larvae development in her traumatized genitals also indicated that she had been sexually molested.

Woods took the children in his car to a cemetery. Enroute, Cody, in the back seat, noticed a black-handled knife in the back of the car. At the cemetery, Woods took Cody out of the car and asked him if his mother was seeing anyone else. He hit Cody and commenced strangling him in front of the car. Cody later testified that he thought he was going to die. He awoke later, crawled over a fence, and attracted the attention of a horseback rider who called the police.

The police later found Woods and told him that they had the "whole story" from Cody. They asked him to tell them where to find Sarah, hoping that she was still alive. Woods told them, "You will not find her alive. I cut her throat." He then led the police to Sarah's body and gave them two written statements. In the statements, he admitted to having had sexual contact with Sarah before leaving the house, that he had taken drugs, and that after Cody fell unconscious in the cemetery, Sarah had started screaming. He left with her in the car toward a bridge on highway 144. She continued to yell that she would tell the police that he had hit Cody. He attempted to quiet her by holding a knife to her throat. According to his statement, Sarah jerked and the knife cut her throat.

Her body was clothed in an inside-out shirt, a sports bra, and

3

a pair of shorts, without panties. Her throat had been deeply cut, severing her larynx and several major arteries and veins, causing massive external bleeding that was the cause of her death.

In addition to finding Woods's semen on Sarah's blanket, investigators found a large butcher knife, stained with Sarah's blood, inside a trash bag that Woods had borrowed from a neighbor the morning after he abducted Sarah and Cody. The bag also contained a pawn ticket bearing Woods's signature and address for items he admitted stealing from the Patterson home. Sarah's blood was on Woods's jersey, which was in the back of his car; her panties were on the car's floorboard. There was evidence that Woods had scratches on his face and arms on the day after the murder that were not there the day before.

Woods was arrested and charged with, *inter alia*, capital murder and was so indicted on June 4, 1997, in Hood County, Texas. The indictment charged him with the murder of Sarah Patterson in the course of committing or attempting to commit the kidnaping of Sarah and Cody Patterson, or in the alternative, the murder of Sarah in the course of committing or attempting to commit the aggravated sexual assault of Sarah. He was also indicted for the attempted capital murder of Cody, arising out of the same criminal transaction.

On Woods's motion, venue was changed to Llano County, where he pleaded not guilty. At trial, Woods testified on his own behalf

4

and admitted to the general contours of that morning's events, including the abductions, but not to the murder. Instead, he offered a version which tended to implicate his cousin. He was found guilty by the jury on May 21, 1998. Following a punishment hearing, the jury returned affirmative answers on May 28 on the issues relating to Woods's future dangerousness and intent to commit murder, and a negative answer on the existence of mitigating circumstances to justify a life sentence. The Llano County trial court sentenced Woods to death.

Woods appealed the conviction and sentence to the Texas Court of Criminal Appeals, and concurrently filed a state application for writ of *habeas corpus*. The Court of Criminal Appeals affirmed in an unpublished opinion. *Woods v. State*, No. 73,136 (Tex. Crim. App. June 14, 2000). His motion for rehearing was denied and the court entered a mandate on September 13, 2000. The Court of Criminal Appeals also denied Woods's *habeas* petition in an unpublished opinion based on the findings of the trial court. *Ex parte Woods*, No. 44,856-01 (Tex. Crim. App. Sept. 13, 2000). The United States Supreme Court denied *certiorari* on February 21, 2001. *Woods v. Texas*, 531 U.S. 1155 (2001). Woods petitioned for federal *habeas* relief in the United States District Court for the Northern District of Texas on December 11, 2000. That court transferred the case to the Western District of Texas, which entered its ruling on summary judgment on February 8, 2002. Pursuant to 28 U.S.C. §

2253(c), which provides that a prisoner may not appeal the denial of a petition for *habeas corpus* under § 2254 without first obtaining a COA from a circuit judge, Woods now seeks a COA on these issues from us in a petition filed April 25, 2002.

## II. Standard of Review.

Woods's federal *habeas* petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Thus, the AEDPA applies to his COA application. *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997); *Nobles v. Johnson*, 127 F.3d 409, 412-13 (5th Cir. 1997). To prevail on an application for a COA, a petitioner must make a "substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether. . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Moore v. Johnson*, 225 F.3d 495, 500 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1420 (2001), quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

In assessing whether a petitioner has demonstrated a substantial showing of the denial of a constitutional right, we must keep in mind the deference scheme laid out in 28 U.S.C. § 2254(d). *See Moore*, 225 F.3d at 501.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

> unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d)(1) provides the standard of review for questions of law and mixed questions of law and fact." *Caldwell v. Johnson*, 226 F.3d 367, 372 (5th Cir. 2000). The court may grant habeas relief under the "unreasonable application" clause "if the state court identifies the correct governing legal principle but applies it incorrectly, or expands a legal principle to an area outside the scope intended by the Supreme Court." *Id.* Furthermore, the state court's application "must be 'unreasonable' in addition to being merely 'incorrect.'" *Id.* In other words, the appropriate inquiry is "'whether the state court's application of clearly established federal law was objectively unreasonable.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). With respect to the "contrary to" clause of § 2254(d)(1), "a federal court may grant the writ if the state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides the case differently than the Supreme Court on a set of materially indistinguishable facts." *Id.*

We review a district court's grant of summary judgment in a *habeas* proceeding *de novo*. *Soffar v. Johnson*, 237 F.3d 411, 449

7

(5th Cir. 2000). "When reviewing summary judgment on a petition for habeas corpus, consistent with the provisions of 28 U.S.C. § 2254(d), we 'presume all state court findings of fact to be correct in the absence of clear and convincing evidence.' " *Id.; Caldwell*, 226 F.3d at 372.

"Because the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

**III. Analysis.**

As a preliminary matter, we must address the scope of Woods's petition. He "submits that a certificate of appealability should issue herein to consider all of the issues raised by the Petitioner . . . and [] that the following matters merit issuance of a certificate of appealability by way of example only[.]" Woods then briefed in some detail the two issues we now review. In the district court, Woods raised 28 issues on federal *habeas* review. Several of them overlapped the two issues presented before us. The district court denied all 28 in an order dated February 8, 2002.[1]

---

[1] In his later petition for COA to the district court, Woods also asserted that a COA "should issue herein to consider all of the issues raised by the Petitioner before the court herein and the following matters by way of example only." He then briefed three issues. On April 12, 2002, the district court considered only those three issues, although noting that some number of Woods's original *habeas* grounds were incorporated into them, and granted a COA on one, that being the admissibility of Woods's confession. As to the other two, the same issues now raised before us, the

8

To the extent that Woods's petition might be construed to embrace any of his prior issues beyond those that we now address, they are denied as inadequately briefed and waived. *Martin v. Cain*, 246 F.3d 471, 475 n.1 (5th Cir.), *cert. denied*, 122 S. Ct. 194 (2001) (issues not briefed will not be considered); *Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 831 (5th Cir. 1993)("[q]uestions posed for appellate review but inadequately briefed are considered abandoned").

## A.  Texas appellate review of the sufficiency of the evidence.

Woods contends that the Texas Court of Criminal Appeals violates constitutional due process using the standard under which it reviews evidence of future dangerousness for sufficiency and by refusing to review the sufficiency of mitigating evidence. He also makes the unsupported contention that such reviews are a violation of constitutional equal protection, but did not brief that assertion and does not seriously argue it. We will address the due process issue and treat the equal protection issue as abandoned.

Woods first argues that the Texas appellate court applies the standard of *Jackson v. Virginia*, 443 U.S. 301 (1979) to the determination of the sufficiency of the evidence to support the jury's finding of his future dangerousness. He contends that the more stringent standard of *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) should be applied instead.

district court denied a COA.

The Texas Court of Criminal Appeals has ruled that the Texas constitution imposes a requirement for an appellate court to review the factual sufficiency of the elements of an offense that is more stringent than that imposed under the United States Constitution's due process clause. *Id*. at 129-30. In that regard, a Texas court of appeals "views all the evidence without the prism of 'in the light most favorable to the prosecution' . . . [and] sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id*. at 129. In so doing, the Court of Criminal Appeals rejected the use of *Jackson* as the appropriate standard in noncapital cases. *Id*. *Jackson* requires only "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

The Court of Criminal Appeals does not, however, apply the *Clewis* standard to determining whether a finding of future dangerousness in a capital murder case has met federal constitutional due process. *See, e.g., Chamberlain v. State*, 998 S.W.2d 230, 232-33 (Tex. Crim. App. 1999). Instead, it explicitly applies the *Jackson* standard. Woods attempts to convince us that the *Clewis* standard should have been used by the state and that the Texas state standard should be that adopted on federal review. We refuse.

10

The *Clewis* standard is rooted in the Texas constitution. *Clewis*, 922 S.W.2d at 130. It applies to the power to review questions of fact when proving the elements of an offense in criminal cases. *Id*. *Jackson*, on the other hand, reflects the federal constitutional due process standard. We apply that standard in our review of federal *habeas* petitions. *See, e.g., Santellan v. Cockrell*, 271 F.3d 190, 193 (2001). We note that the state appellate court observed the federal standard of review on the question of future dangerousness -- as distinct from a finding on the elements of an offense -- in a capital murder case. It did so knowing that we would do so on federal *habeas* review. We cannot impose a Texas constitutional standard for the factual review of the elements of a crime on the state's courts of appeals when reviewing the issue of a defendant's future dangerousness. Neither do we adopt other than the federal standard.

During the punishment phase of the trial, the jury was presented with evidence of Woods's future dangerousness, including toxicology evidence rebutting Woods's claims that he was under the influence of drugs at the time of the murder and witnesses who testified regarding Woods's affinity for knives and his propensity to taunt people with them. There was psychiatric testimony that Woods had an antisocial personality disorder. When combined with his violent tendencies, he posed a continuing threat to commit future acts of criminal violence. Additionally, there was evidence

11

regarding the opportunities that life-sentenced capital offenders had to commit violence in a prison environment. Woods countered with evidence from jailers that he had not caused any problems while incarcerated before and during the trial and that he had become suicidal after his conviction. He also presented evidence of borderline mental retardation and the ability of the Texas penal system to control such prisoners. A defense psychologist disagreed that Woods had an antisocial personality disorder and that Woods would probably not commit criminal acts of violence in a prison environment. A family physician also offered testimony challenging whether Woods was the source of the HPV infection found in Sarah. On the balance, the jury returned a finding of future dangerousness. On review under *Jackson*, the Texas Court of Criminal Appeals's decision to deny relief was not unreasonable and we will not disturb it.

Woods next argues that the Texas appellate court's refusal to review the jury's determination of whether special mitigating factors existed to sentence a criminal otherwise fully qualified for death instead to life in prison, is a violation of due process. This is precisely the issue we answered in *Moore v. Johnson* as a pure question of law. *See Moore*, 225 F.3d at 505.

A capital murder trial in Texas proceeds in a bifurcated process. In the first, or "guilt-innocence," phase, a defendant's eligibility for consideration of the death penalty is determined.

12

Once that eligibility is determined, the trial proceeds to the second, or "punishment," phase, wherein the defendant is either selected for death or for the alternative sentence of life imprisonment. In that phase, the state presents the jury with evidence of certain aggravating factors, including the manner of the offense and future dangerousness. The defendant also presents the jury with mitigating evidence. The jury is then asked to determine whether the aggravating factors have been shown beyond a reasonable doubt, thus qualifying the defendant for selection for the death penalty. If so, the jury is then asked whether the defendant's mitigating evidence is sufficient to warrant the imposition of a life sentence rather than the death penalty. The Texas Court of Criminal Appeals has explained that:

> [i]n Texas, this mitigating evidence is admissible at the punishment phase of a capital murder trial. Once admitted, the jury may then give it weight, if in their individual minds it is appropriate, when answering the questions which determine sentence. However, "[t]he amount of weight that the factfinder might give any particular piece of mitigating evidence is left to 'the range of judgment and discretion' exercised by each juror."

*See Colella v. State*, 915 S.W.2d 834, 844 (Tex. Crim. App. 1995)(quoting *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994); *Johnson v. State*, 773 S.W.2d 322, 331 (Tex. Crim. App. 1989), *aff'd*, *Johnson v. Texas*, 509 U.S. 350 (1993)). No burden of proof exists for either the state or the defendant to disprove or prove the mitigating evidence. *Colella*, 915 S.W.2d at 844. Thus,

13

each juror individually and subjectively determines what evidence, if any, is sufficient to mitigate against the imposition of the death penalty.

The Texas Court of Criminal Appeals has consistently refused to review such a subjective determination on the part of individual jurors. *See Colella*, 915 S.W.2d at 845 ("[b]ecause the weighing of 'mitigating evidence' is a subjective determination undertaken by each individual juror, we decline to review the evidence for sufficiency").

We held in *Moore* that Texas is within the ambit of federal law as interpreted by the United States Supreme Court. *See Moore*, 225 F.3d at 507. We did so in view of *Tuilaepa v. California*, 512 U.S. 967 (1994), in which the Supreme Court distinguished between a jury's "eligibility decision" and its "selection decision." It is the eligibility decision that must be made with maximum transparency to "make rationally reviewable the process for imposing a sentence of death." *Moore*, 225 F.3d at 506 (quoting *Tuilaepa*, 512 U.S. at 973). On the other hand, a jury is free to consider a "myriad of factors to determine whether death is the appropriate punishment. Indeed, the sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." 225 F.3d at 506 (quoting 512 U.S. at 979-80). It is the jury's subjective and

14

"narrowly cabined but unbridled discretion to consider any mitigating factors," 225 F.3d at 507, that Texas refrains from independently reviewing.  We continue to hold that Texas may correctly do so.

Woods argues that the approach taken by the Court of Criminal Appeals conflicts with the Supreme Court's ruling in *Johnson v. Texas*, 509 U.S. 350 (1993).  He characterizes *Johnson* as imposing a requirement on a reviewing court to balance a defendant's capacity for rehabilitation using the mitigating evidence of his character and background against the circumstances of the murder and any other violent acts to review the sufficiency of evidence. We disagree.  *Johnson* was, at the time it was decided, the "latest in [the Supreme Court's] series of decisions in which the Court has explained the requirements imposed by the Eighth and Fourteenth Amendments regarding consideration of mitigating circumstances by *sentencers* in capital cases."  *Id*. at 359 (emphasis added).  The Court then reviewed its decisions on the role and availability of mitigating evidence to juries, from the earliest in *Furman v. Georgia*, 408 U.S. 238 (1972), through *Greg v. Georgia*, 428 U.S. 153 (1976), *Proffitt v. Florida*, 428 U.S. 242 (1976), *Jurek v. Texas*, 428 U.S. 262 (1976), *Woodson v. North Carolina*, 428 U.S. 280 (1976), *Roberts v Louisiana*, 428 U.S. 325 (1976), *Lockett v. Ohio*, 438 U.S. 586 (1978), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), *Franklin v. Lynaugh*, 487 U.S. 164 (1988), *Penry v. Lynaugh*, 492

15

U.S. 302 (1989), and *Boyde v. California*, 494 U.S. 370 (1990), among others.

Some of those decisions specifically examined aspects of the Texas capital crime special issues as they applied to giving a jury a meaningful way to give effect to mitigating evidence. In particular, the Court distinguished the facts in *Johnson*, regarding the jury's ability to give effect to the defendant's youth at the time of the crime, from those in *Penry v. Lynaugh*, regarding the jury's ability to give effect to the defendant's evidence of mental retardation and childhood abuse. *Johnson*, 509 U.S. at 364-73. The only apparent reference to the duty of a reviewing court is that the Court had "held that a reviewing court must determine 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.'" *Id*. at 367, quoting *Boyde*, 494 U.S. at 380.

We decline to read *Johnson* as Woods propounds. We instead reiterate our previous holding on this issue in *Moore* and rule that Woods has not made a substantial showing of the denial of a constitutional right and that the Texas Court of Criminal Appeals is not unreasonable in its refusal to review the sufficiency of mitigating evidence.

Finally, we note that if Woods had successfully argued on either of these two sufficiency-of-review issues, he still could

16

not apply the result to his case. His reading of either *Clewis* or *Johnson*, or both, would impose a new rule of law not made retroactive by the Supreme Court. Therefore, he would be barred from its use under the non-retroactivity doctrine of *Teague v. Lane*, 489 U.S. 288 (1989).

**B.  The *Simmons* issue.**

Woods finally attempts to extend the jury instruction requirement of *Simmons v. South Carolina*, *supra*, to cover his circumstance, citing only that "[s]uch an instruction is required to comport with due process." By that statement, we infer that Woods raises this argument under color of the Fourteenth Amendment.

Woods argues that *Simmons*, *Skipper v. South Carolina*, 476 U.S. 1 (1990), and *O'Dell v. Netherland*, 521 U.S. 151 (1997) hold that where future dangerousness is at stake, a jury must be told of the fact that the prisoner, if given a life sentence rather than a death sentence, would serve a significant period of incarceration before he could be released on parole. He blatantly misstates the meaning of those decisions.

*Simmons* requires that where a defendant's future dangerousness is at issue and state law prohibits his release on parole after being sentenced to life imprisonment, the jury must be informed that the defendant is parole-ineligible. 512 U.S. at 171 ("[t]he State may not create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at

17

the same time, preventing the jury from learning that the defendant never will be released on parole"). The pertinent aspect of that ruling as it applies to Woods's case is that publishing such information to the jury is *required* only where state law provides for life imprisonment without possibility of parole as an alternative to the death penalty.

*Skipper* held that a state's refusal to admit a defendant's evidence of good behavior in prison during the punishment phase of his capital trial prevented the presentation of relevant mitigating evidence to the jury in violation of the Eighth, 476 U.S. at 4, and Fourteenth, *id*. at 5 n.1, Amendments.

In *O'Dell*, the Court held that the rule of *Simmons* was not a "new rule" within the meaning of *Teague v. Lane*, *supra*. Neither did it fall within one of the exceptions to *Teague* because it was not a "watershed rule of criminal procedure." It therefore was inapplicable retroactively on collateral review, even for a defendant who six years earlier had been sentenced to death while prevented from informing his jury that if sentenced to life, he would have been parole-ineligible. 521 U.S. at 165-66.

Under his misreading of these cases, Woods would analogize his situation to that of *Simmons*. He argues that the alternative sentence to the death penalty in Texas is life imprisonment with parole-eligibility after 40 years and that such a "significant period of incarceration" should be treated identically to life

18

imprisonment without possibility of parole for the purposes of informing the jury. In addition to the language of *Simmons* itself, we have recognized that parole eligibility in a life sentence fails to trigger its rule. We interpret *Simmons* to require that a jury be informed about the defendant's parole eligibility only when (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole. *See Miller v. Johnson*, 200 F.3d 274, 290 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000). That is not the case here.

Even if *Simmons* could be read as Woods asserts, it would be a new rule of constitutional criminal procedure and thus *Teague*-barred. *O'Dell*, 521 U.S. at 165-66; *Wheat v. Johnson*, 238 F.3d 357, 361-62 (5th Cir.), *cert. denied*, 532 U.S. 1070 (2001) (holding that extending the *Simmons* rule to the *Wheat* facts would establish a new rule of constitutional law, which is barred on collateral review by *Teague*).

Therefore, Woods cannot make a substantial showing of the denial of a constitutional right.

## IV. Conclusion.

For the reasons stated herein, find that the state court's application of clearly established federal law was neither objectively unreasonable nor opposite to the conclusions of the Supreme Court. We therefore DENY Woods's petition for COA on all issues.