**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 02-10620**
_____

**CEDRIC LAMONT RANSOM,**

**Petitioner-Appellant,**

**versus**

**JANIE COCKRELL,**

**Respondent-Appellee.**

_____

Appeal from the United States District Court
for the Northern District of Texas
Civil Docket #00-CV-242
_____

March 5, 2003

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Cedric Lamont Ransom (Ransom) was convicted of capital murder and sentenced to death for murdering Herbert Primm during a robbery in December 1991. Ransom seeks a certificate of appealability (COA) on sixteen claims to challenge the district court's denial of his 28 U.S.C. § 2254 petition for habeas corpus relief. We deny a COA on all of these claims.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.  BACKGROUND

In December 1991, Ransom and three co-defendants robbed Herbert Primm, a part-time licensed gun dealer.  During the robbery, Ransom fatally shot Primm in the head.  A jury convicted Ransom of capital murder, and he was sentenced to death.  The Texas Court of Criminal Appeals affirmed Ransom's conviction but vacated his sentence and remanded for a new sentencing hearing due to error during jury selection.  Ransom v. State, 920 S.W.2d 288, 298 (Tex. Crim. App. 1996) (op. on reh'g).  On retrial of punishment, Ransom was again sentenced to death.  The  Texas Court of Criminal Appeals affirmed the death sentence on direct appeal and denied Ransom habeas relief.

In March 2000, Ransom filed a federal petition for writ of habeas corpus raising sixteen claims.  The district court denied the petition and subsequent application for COA.  Ransom asks this Court to grant a COA for each of the sixteen claims raised before the district court; each requested COA is denied.

## II.  DISCUSSION

Ransom's 28 U.S.C. § 2254 habeas petition, filed in March 2000, is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  See Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 1918, 150 L. Ed. 2d 9, 22 (2001).  Under AEDPA, Ransom must obtain a COA before he can appeal the district court's denial of habeas relief.  28 U.S.C. § 2253(c)(1); Slack v. McDaniel, 529 U.S. 473, 478, 120 S. Ct. 1595, 1600, 146 L. Ed. 2d 542, 551 (2000).

To obtain a COA for any of his claims, Ransom must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack, 529 U.S. at 483, 120 S. Ct. at 1603, 146 L. Ed. 2d at 554.  When a district court has rejected a constitutional claim on the merits, a COA will be granted only if Ransom "demonstrate[s] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack, 529 U.S. at 484, 120 S. Ct. at 1604, 146 L. Ed. 2d at 555; see also Miller-El v. Cockrell, 537 U.S.___, 2003 U.S. LEXIS 1734, at *30 (U.S. Feb. 25, 2003).  When the denial of relief is based on procedural grounds, Slack provides a two-prong test for determining whether a COA should issue: the applicant must show (1) that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  Each prong of the test is part of a threshold inquiry, and a court may dispose of the application by resolving the issue whose answer is more apparent from the record and arguments.  Id. at 485.  "The recognition that the Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of, allows and encourages the court to first resolve procedural issues."  Id. (internal quotation marks and citation omitted).

## A. Procedurally defaulted claims

Exhaustion of state remedies is a prerequisite to federal habeas relief under 28 U.S.C. § 2254.[1]  The district court determined that twelve[2] of the sixteen claims in Ransom's federal habeas petition are procedurally defaulted because they were not exhausted on the state level.[3]  In the habeas context, this court

---

[1]   28 U.S.C. § 2254 provides in pertinent part:

  (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.


[2]   A portion of one of the twelve claims was exhausted.  In a single claim, Ransom argues that his due process rights guaranteed by the Fifth and Fourteenth Amendments were violated because the state trial court allowed victim-impact testimony from the victim's wife, certain photographs of the victim, and photographs of two victims from extraneous offenses to be admitted.  Like the district court, we conclude that Ransom did not exhaust the portion of this claim relating to admission of the photographs but that he did exhaust with regard to admission of the victim's wife's testimony.  Ransom's entire argument regarding the exhausted portion of the claim, however, consists of only one paragraph without citations to authority in support of his position.  We therefore consider the issue inadequately briefed and abandoned. See Woods v. Cockrell, 307 F.3d 353, 357 (5th Cir. 2002).


[3]   The twelve procedurally defaulted claims, in the order addressed by his COA application in this court, are that Ransom's due process rights guaranteed by the Fifth and Fourteenth amendments were violated because (1) evidence regarding an extraneous assault was admitted during the guilt/innocence phase of the trial; (2) evidence regarding an extraneous burglary was admitted during the guilt/innocence phase of the trial; (3) co-defendant Isaac Johnson was allowed to testify even though the State did not comply with a pretrial discovery order requiring the disclosure of all leniency agreements with witnesses; (4) defense counsel was not permitted to ask two veniremembers, Roose and Campbell, certain questions about sentencing and parole eligibility; (5) the district court denied Ransom's motion for change of venue; (6) the district court denied Ransom's challenges for cause to two veniremembers, Davidson and Wieman, at retrial of the punishment phase; (7) certain photographs of the victim and photographs of two victims from extraneous offenses were admitted; (8) the district court allowed into evidence the unsigned statement of a juvenile as well as testimony regarding the statement; (9) the district court granted the State's challenge for cause to veniremember Linda Hobbs because of her views on the death penalty; (10) the district court instructed the jury on the law of parties; (11) the district court

4

reviews questions of law, such as the exhaustion of state remedies, de novo, <u>Wilder v. Cockrell</u>, 274 F.3d 255, 259 (5th Cir. 2001), and can affirm the district court's judgment on any ground supported by the record, <u>Emery v. Johnson</u>, 139 F.3d 191, 195 (5th Cir. 1997).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." <u>Whitehead v. Johnson</u>, 157 F.3d 384, 387 (5th Cir. 1998) (per curiam). "[W]here petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." <u>Vela v. Estelle</u>, 708 F.2d 954, 958 n.5 (5th Cir. 1983). "[F]ederal constitutional claims must have been presented to and considered by the state courts in a federal constitutional framework before resort can be made to federal courts." <u>Yohey v. Collins</u>, 985 F.2d 222, 226 (5th Cir. 1993). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." <u>Anderson v. Harless</u>, 459 U.S. 4, 6, 103 S. Ct. 276, 277, 74 L. Ed. 2d 3, 7 (1982) (per curiam) (internal citation omitted). If a habeas petitioner fails to exhaust state remedies and the court to which the petitioner would present his claims to meet the exhaustion requirement would now find the claims procedurally barred, there is procedural default for purposes of

---

did not define the term "probability" to the jury as it is used in the first special issue answered by a jury during the punishment phase of Texas capital murder trials; (12) the district court overruled Ransom's request that the jury be instructed on his parole eligibility if he were given a life sentence.

federal habeas.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 n.1, 115 L. Ed. 2d 640, 659 n.1 (1991).

Although Ransom presented the factual bases for the twelve claims listed in footnote 3 to the Texas Court of Criminal Appeals in either his first or second direct appeal, he did not argue that his federal constitutional rights had been violated by the alleged errors.  If Ransom filed a successive state habeas petition on these claims now, the Texas Court of Criminal Appeals would find the claims barred by Article 11.071 § 5(a) of the Texas Code of Criminal Procedure.[4]  Ransom's twelve claims are therefore procedurally defaulted for purposes of federal habeas, and, since

---

[4]  TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5(a) provides:

Sec. 5. (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

Ransom does not contend that there is cause or prejudice for him failing to present his federal claims in state court.

reasonable jurists could not debate the correctness of this procedural ruling, we deny a COA on each of the twelve claims.[5]

## B. Properly Exhausted Claims

We now turn to the claims that Ransom exhausted in state court.

## Denial of a new trial on guilt/innocence

Ransom argues that the Texas Court of Criminal Appeals violated his due process rights guaranteed by the Fifth and Fourteenth Amendments by denying him a new trial on guilt/innocence and by reversing only the punishment portion of his trial after finding jury selection error.[6] Ransom contends that his conviction as well as his sentence should have been reversed because the voir dire error is a structural defect not subject to harmless error analysis. The district court properly recognized that the issue is not whether the error is harmless but whether the error affected the guilt/innocence stage of the trial.

The Texas Court of Criminal Appeals based its decision not to reverse the guilt/innocence phase of Ransom's trial on two Supreme Court cases and several Texas state cases. In <u>Witherspoon</u>

---

[5] The district court ruled that four of these claims, numbers 4, 9, 11 and 12 on the list in fn. 3 <u>supra</u>, were moot because they arose from the penalty phase of the first trial, and Ransom won a retrial of his penalty, rendering it unnecessary for the Texas Court of Criminal Appeals to rule on those issues in the first appeal. We agree with this alternative ruling as well.

[6] The State conceded that the Texas trial court committed reversible error by granting the State's challenge for cause against venireman Harold Freeman based on his statement that "it would take more than the evidence supporting the defendant's guilt for capital murder to persuade him beyond a reasonable doubt that the defendant was a continuing danger to society." <u>Ransom v. State</u>, 920 S.W.2d 288, 291-92 (Tex. Crim. App. 1994). Initially the Texas Court of Criminal Appeals reversed Ransom's conviction and remanded for a new trial, but on rehearing the Court affirmed Ransom's conviction, vacated his sentence, and remanded for a new sentencing hearing.

v. Illinois, 391 U.S. 510, 518, 88 S. Ct. 1770, 1775, 20 L. Ed. 2d 776 (1968), the Supreme Court held that the excusal for cause of a venireman based on conscientious scruples about the death penalty would invalidate a death sentence but would not necessarily affect a capital murder conviction. In Bumper v. North Carolina, 391 U.S. 543, 545, 88 S. Ct. 1788, 1790, 20 L. Ed. 2d 797 (1968), the Supreme Court held that Witherspoon error did not require reversal of a defendant's conviction where the defendant had been given a life sentence instead of the death penalty. In both cases, the Supreme Court concluded that unless a defendant presents evidence that voir dire error necessarily produced biased jurors with respect to guilt, the defendant's conviction will not be affected. Witherspoon, 391 U.S. at 517-18, 88 S. Ct. at 1774-75, 20 L. Ed. 2d at 782-83; Bumper, 391 U.S. at 545, 88 S. Ct. at 1790, 20 L. Ed. 2d at 800-01. Because Ransom has not presented any evidence that the voir dire error in his case resulted in a jury biased with respect to guilt, his claim is without merit; he has not made a substantial showing of the denial of a constitutional right. We therefore deny his request for a COA on this claim.

**Exclusion of testimony at resentencing**

Ransom argues that his due process rights guaranteed by the Fifth and Fourteenth Amendments were violated when the state trial court prohibited Ransom from introducing the testimony of Assistant Attorney General Alan Levy that if Ransom were given a life sentence, the State would try Ransom for the attempted murder of prosecutor Bob Gill and would seek a consecutive maximum

sentence of twenty years.  Ransom contends that this evidence was relevant to the issue of future dangerousness because it would have shown that if the jury gave him a life sentence, he would have been confined for the rest of his life in a secure prison environment.

The district court properly recognized that the admissibility of evidence at capital sentencing is an issue left to the States, subject to certain federal requirements.  Ramdass v. Angelone, 530 U.S. 156, 169, 120 S. Ct. 2113, 2121-22, 147 L. Ed. 2d 125, 138 (2000).  The court denied habeas relief because the state courts rejected the evidence on state law grounds and Ransom did not cite to, and the district court could not find, any precedent holding that federal due process requires the admission of this type of evidence during the punishment phase of a capital murder trial.  Because reasonable jurists would not find the district court's resolution of this claim debatable, Ransom is not entitled to a COA on this claim.

**Constitutionality of the Texas death penalty statute**

Ransom next argues that the Texas death penalty statute is unconstitutional on its face and as applied, violating the Sixth, Eighth, and Fourteenth Amendments, because it precludes appellate review of relevant mitigating factors, leaving capital juries with unfettered discretion to assess the death penalty.[7]

---

[7]  With respect to this claim and Ransom's next claim, the state's argument on procedural bar was rejected by the district court, and the state has not questioned that ruling on appeal.  We therefore reach the merits of the claims.

First, because Ransom has not challenged the sufficiency of the evidence in his case, he lacks standing to challenge the constitutionality of the Texas death penalty statute on the ground that appellate courts do not conduct a sufficiency review of the mitigation special issue. "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact[.] . . . Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely . . . that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351, 364 (1992) (internal quotation marks and citations omitted). Because Ransom has not sought any form of sufficiency review by the Texas or federal courts, he has not been denied the review which he claims is constitutionally deficient. He therefore has not suffered an injury in fact, nor has he shown that his alleged injury could be redressed by a favorable decision.

Nevertheless, even if Ransom had standing to bring this claim, it is without merit. "In providing for individualized sentencing, it must be recognized that the States may adopt capital sentencing processes that rely upon the jury, in its sound judgment, to exercise wide discretion." Tuilaepa v. California, 512 U.S. 967, 974, 114 S. Ct. 2630, 2636, 129 L. Ed. 2d 750, 761 (1994). As long as the class of criminal defendants subject to capital punishment is narrowed, it is constitutionally permissible to allow a jury, rather than an appellate court, to recommend mercy

10

based on mitigating evidence.  <u>Penry v. Lynaugh</u>,  492 U.S. 302, 327, 109 S. Ct. 2934, 2951, 106 L. Ed. 2d 256, 283 (1989); <u>see</u> <u>also</u> <u>McCleskey v. Kemp</u>, 481 U.S. 279, 306, 107 S. Ct. 1756, 1775, 95 L. Ed. 2d 262, 288 (1987) (petitioner not entitled to proportionality review of the death sentence); <u>Pulley v. Harris</u>, 465 U.S. 37, 50-51, 104 S. Ct. 871, 879, 79 L. Ed. 2d 29, 40-41 (1984) (same); <u>Hughes v. Johnson</u>, 191 F.3d 607, 622 (5th Cir. 1999) (same). Furthermore, this Court has held that even though Texas appellate courts do not review jury verdicts under the mitigation special issue, meaningful appellate review is afforded through review of the future dangerousness special issue.  <u>Beazley v. Johnson</u>, 242 F.3d 248, 261 (5th Cir. 2001) (citing <u>McFarland v. State</u>, 928 S.W.2d 482, 498 (Tex. Crim. App. 1996)).  Because reasonable jurists would not find the district court's assessment of the constitutionality of Texas's death penalty statute debatable or wrong under Supreme Court precedent or precedent from this circuit, we deny a COA on the claim.

**Denial of motion for mistrial**

Ransom contends that his due process rights guaranteed by the Fifth and Fourteenth Amendments were violated because the state trial court did not take action in response to his motion for mistrial and because a biased juror served on his jury.  Ransom's motion for mistrial alleged that during a break at trial, Ransom's half-brother, Tyrone Calloway, offered to help juror Richard Harding pull paper towels out of the dispenser in the men's

11

restroom. Harding allegedly told Calloway that he did not "need any damn help from no nigger."

Contrary to Ransom's allegation, the trial court did respond to Ransom's motion for mistrial. Without objection, the trial court held the motion in abeyance until the end of trial, then held a hearing at which Harding and Calloway testified. The trial court found that the incident did not occur and that there was no evidence of actual bias or proof that Ransom was denied a trial by a fair and impartial jury.

The Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Smith v. Phillips, 455 U.S. 209, 215, 102 S. Ct. 940, 945, 71 L. Ed. 2d 78, 85 (1982). Ransom was afforded a hearing at which he failed to prove actual bias, and he has not presented clear and convincing evidence that the state trial court's findings were incorrect. Because reasonable jurists would not debate the district court's resolution of this claim, we deny Ransom's request for a COA.

### III. CONCLUSION

For the foregoing reasons, we deny Ransom's request for a COA on his twelve procedurally defaulted claims. We also deny a COA on each of Ransom's remaining claims because he has failed to make a substantial showing of the denial of a constitutional right.

COA **DENIED**.

12